Johnny Lee LONG,
Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 85–1012.

United States Court of Appeals,
Fifth Circuit.

June 27, 1986.

Johnny Lee Long, pro se.

Barry C. Barnett, Houston, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, RUBIN, and GARZA, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A prisoner sentenced to life imprisonment by a Texas state court as a multiple offender seeks to attack the validity of one of the earlier convictions on which his sentence was based and the voluntariness of his plea at the later trial that the earlier conviction was "true." We hold that the prisoner's plea of "true" to the charge that he had been duly and legally convicted, if voluntarily and knowingly entered, forecloses his attack on the prior conviction. We also deny petitioner's request for a

1. Tex.Penal Code § 12.42(d) (Vernon 1974).

remand to hold an evidentiary hearing on the validity of the enhancement plea because the state court record establishes that the prisoner pleaded "true" knowingly and voluntarily.

## I.

Johnny Long is serving a life sentence in a Texas penitentiary pursuant to a 1979 conviction for theft enhanced by two prior convictions, one in 1974 and the other in 1970. In 1970, Long had pleaded guilty to a burglary charge in Texas state court. All that remains of the record of that proceeding is a document signed by Long stating that he waives all his constitutional rights. There is no transcript of the plea hearing.

After the jury had returned a verdict of guilty to the 1979 offense, the State presented two enhancement counts to the court at the sentencing hearing. The count relative to the 1970 conviction reads: "And the Grand Jurors ... do further present that prior to the commission of each of the [other] offenses ..., to wit: on the 18th day of May, A.D.1970, in the 54th Judicial District Court of McLennon County, Texas in cause No. 16756 ... Johnny Lee Long ... *was duly and legally convicted* ... of a felony, to wit: Burglary...." (Emphasis added.)

Long pleaded "true" to the enhancement allegations and was sentenced to life imprisonment, the mandatory sentence under Texas law at that time.[1] He now attacks the 1970 conviction on the basis that his guilty plea was involuntary.

The district court held that Long's "true" plea bars his attack, relying on our 1970 decision in *Zales v. Henderson*.[2] Long contends that *Zales* should be overruled and that he should be allowed to attack the validity of his 1970 conviction despite his plea of "true" to the enhancement charge in his 1979 sentencing hearing. He also contends his "true" plea in 1979 was involuntary and unknowing because neither the

2. 433 F.2d 20 (5th Cir.1970).

state trial court nor his court-appointed attorney admonished him "as to the elements of the offense or to the full range of punishment."

## II.

In *Zales v. Henderson,* we found that a habeas petitioner who pleaded guilty to enhancement charges in a habitual-offender hearing "waived any complaints he may have had concerning the former offenses which were set out in the enhancement charge."[3] The petitioner in *Zales* asserted that the prior convictions were unconstitutional and that, under *Burgett v. Texas,*[4] they could not be used to enhance the sentence under his current conviction. Relying on the *Brady* guilty-plea trilogy,[5] which held that a guilty plea "waives" certain antecedent constitutional defects, this court affirmed the denial of the petition, stating, "[W]e deem the guilty plea in the habitual offender trial to be both the alpha and the omega of our determination."[6]

Both Long and the State of Texas consider *Zales* and its successors[7] to be directly applicable here. Long, however, contends that *Zales* should be overruled on the basis of two later Supreme Court decisions, *Haring v. Prosise*[8] and *Menna v. New York.*[9] The State insists that *Zales* is still the law of the circuit and that the Supreme Court decisions do not require any modification of the *Zales'* "waiver" rule.

We agree with the State's argument, but in order to avoid future confusion concerning Fifth Circuit precedent, we think it appropriate to mention two post-*Zales* Fifth Circuit cases that might appear, on first glance, to conflict with the *Zales* holding.

In a 1973 decision, *Weaver v. Texas,*[10] we considered a petitioner's claim that a prior conviction, entered in 1958, was unconstitutional because his guilty plea to that charge was not knowingly or voluntarily made. In 1970, Weaver had been convicted of burglary a second time, and his 1958 conviction was used for enhancement purposes. The court in *Weaver* noted that, at the time of his 1970 conviction, "Weaver did not object to nor assert that his 1958 conviction was invalid."[11] Apparently, Weaver had not pleaded expressly either "guilty" or "true" to the enhancement allegation concerning his 1958 conviction, but simply did not object to it.

The State in *Weaver* argued that, because the petitioner had not attacked the validity of his 1958 conviction when it was used for enhancement purposes in the 1970 action, he could not do so later,[12] citing as authority for this proposition *Zales* and *Price v. Beto.*[13] The court treated Weaver's failure to challenge the 1958 conviction during the 1970 proceedings as the equivalent of pleading "true" to the enhancement charge, but nonetheless rejected the State's argument. It stated, citing *Zales* and *Price v. Beto,* "[Weaver's] failure to attack the validity of his 1958 conviction, used in his 1970 conviction for enhancement pur-

---

**3.** *Id.* at 20, 24.

**4.** 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

**5.** *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (alleged coerced confession); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (guilty plea allegedly entered in fear of death penalty, which penalty later found unconstitutional); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (same).

**6.** *Zales,* 433 F.2d at 22.

**7.** *See, e.g., Vail v. Procunier,* 747 F.2d 277, 278 (5th Cir.1984); *Scott v. Maggio,* 695 F.2d 916, 922 (5th Cir.), *cert. denied,* 463 U.S. 1210, 103

S.Ct. 3544, 77 L.Ed.2d 1393 (1983); *Kemph v. Estelle,* 621 F.2d 162, 163 (5th Cir.1980) (per curiam); *Price v. Beto,* 436 F.2d 1070 (5th Cir. 1971) (per curiam).

**8.** 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983).

**9.** 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam).

**10.** 474 F.2d 1135 (5th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 569, 38 L.Ed.2d 468 (1973).

**11.** *Id.* at 1137.

**12.** *Id.*

**13.** 436 F.2d 1070 (5th Cir.1971).

poses, prevents him from using that as a grounds for habeas relief with respect to his *1970 conviction*." [14] The court then stated that *Zales* did not foreclose an independent habeas attack "made directly on his *1958 conviction*." [15]

Our decisions since *Zales* have applied the *Zales* waiver doctrine only in the context of "true" pleas.[16] When a petitioner has not pleaded "true" to an enhancement charge, or the issue has not been raised by the parties, our decisions have allowed subsequent challenges to the validity of a prior conviction to be asserted when the petitioner was challenging the later enhanced sentence.[17] Such challenges to the prior conviction, in and of an attack on the enhanced sentence, are allowed, in part, because a mere failure to attack the validity of a prior sentence at an enhancement proceeding does not relieve the State of its burden of proving that the prior conviction was properly obtained.[18] The issue of the validity of the prior conviction is not properly considered "waived" by mere silence, and, absent some procedural bar,[19] may be entertained in a subsequent habeas action. A plea of "true," on the other hand, relieves the State of its burden of proof and, as such, provides the basis for the *Zales* waiver doctrine.[20] *Weaver* is aberrational in its suggestion that, even if a "true" plea to the enhancement charge was not entered, the attack on the enhanced sentence is precluded by *Zales*. While the *Zales* doctrine is applicable in the present case, it is limited to situations in which, as here, the petitioner has pleaded "true" or "guilty" when pleading to the enhancement charge.

Moreover, the language used in *Zales* and *Price* is broad,[21] and does not readily admit the distinction between subsequent collateral attacks on prior convictions and on enhanced sentences that the *Weaver* court gleaned from it. When a "true" plea has been entered, *Zales* appears to prohibit subsequent collateral attacks on prior convictions in any context, whether denominated an attack on only the prior conviction, independently of the enhanced sentence, or an attack on the enhanced sentence by way of the prior conviction.

Despite the apparent conflict in the rationale expressed for decision, the facts in *Weaver* indicate an unexpressed, but nevertheless sufficient, reason for the difference in result. The petitioner in *Weaver*, unlike Long or the prisoner in *Zales*, was still serving time under his prior conviction, as well as under his subsequent enhanced sentence. Weaver's later conviction was obtained for a crime he had committed while on parole for his first conviction. The court explained in *Weaver*, "[i]f [the prior] conviction should now be found invalid the State would have no legal basis for continuing Weaver's incarceration under the [prior] conviction, but could keep him in prison under the [later] conviction." [22] *Weaver's* gloss on the *Zales* doctrine is thus appropriately limited to cases in which the prisoner is currently serving time under both the prior conviction and the later enhanced conviction.

We have found no decision since *Weaver* in which a petitioner, who had pleaded "true," was actually serving time under

---

**14.** 474 F.2d at 1137.

**15.** *Id.*

**16.** *See supra* note 7.

**17.** *See, e.g., McGee v. Estelle,* 732 F.2d 447 (5th Cir.1984) (per curiam); *Mendiola v. Estelle,* 635 F.2d 487 (5th Cir.1981) (per curiam); *Martinez v. Estelle,* 612 F.2d 173 (5th Cir.1980) (Texas contemporaneous objection rule); *Davis v. Estelle,* 529 F.2d 437 (5th Cir.1976); *Webster v. Estelle* 505 F.2d 926 (5th Cir.1974), *cert. denied,* 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975).

**18.** *See McGee v. Estelle,* 732 F.2d at 450–51 (quoting *Ex parte Augusta,* 639 S.W.2d 481 (Tex. Cr.App.1982)).

**19.** *See Mendiola,* 635 F.2d at 490 (Tex.Crim.App. 1982) (discussion of Texas enhancement procedure); *McGee v. Estelle,* 732 F.2d at 451 (Rule 9(a) of Section 2254).

**20.** *See, e.g., Dinn v. State,* 570 S.W.2d 910 (Tex. Crim.App.1978).

**21.** *Zales,* 433 F.2d at 24; *Price,* 436 F.2d at 1071.

**22.** 474 F.2d at 1138.

both the prior conviction and the subsequent enhanced conviction, and later sought to set aside only the prior conviction. As a practical matter, when a petitioner serving under an enhanced sentence attacks the prior conviction he does so primarily, if not entirely, because of the possible effect of his attack on the validity of the enhanced sentence. Hence, we have not considered it necessary to distinguish between whether the petitioner attacks only the prior conviction or the enhanced sentence. Indeed, Long's attack is not merely an independent attack on the prior conviction. He challenges this prior conviction only because, as he argues in his brief, "[a] void conviction may not be used to enhance an individual's sentence under the Texas statute."[23] But because Long pleaded "true" to the enhancement charges, and because he is not currently serving time under the prior conviction, *Zales* prohibits this later collateral attack, whether it is denominated as an independent attack on the prior or as an attack on the present enhanced sentence through a challenge to the prior conviction.

Both the question and the answer are different when the issue is whether a state prisoner who seeks to present an independent attack on a prior conviction has exhausted state remedies. In *Escobedo v. Estelle*,[24] Escobedo had been given an enhanced sentence of life in prison on the basis of a prior conviction obtained on a guilty plea. In his federal habeas petition, he collaterally attacked the prior conviction on the ground that his guilty plea on which that conviction rested was unknowing and involuntary. The State did not urge that *Zales* precluded the attack on the prior conviction but that Escobedo had not exhausted his state remedies. It does not appear how Escobedo pleaded to the enhancement charge, and it may be that the

*Zales* issue was not raised because Escobedo did not concede the charge.

The court held that Escobedo had exhausted his state remedies by way of a previous state habeas action, pursued after the later conviction, which had attacked only the validity of his prior conviction. The court also found that the fact that Escobedo was, at the same time, challenging the prior conviction in the Texas courts in the context of a direct appeal from the later conviction did not bar his presentation of the issue to federal court: "The mere possibility of success in additional state proceedings does not bar federal consideration of the claim."[25] Noting that under Texas law a petitioner may successfully challenge the validity of an earlier conviction directly or collaterally in a proceeding independent of, and making no attack on, the later conviction,[26] the court added, "this result seems altogether logical and proper, for a prior conviction may have *many* 'serious collateral consequences' of the sort that are cognizable under Texas habeas corpus law, including some consequences that are completely distinct and independent from the prior conviction's use for enhancement purposes."[27] The success of such an attack would not necessarily *ipso facto* invalidate the later sentence for, as we pointed out in *Escobedo*, the Texas decision that permitted the earlier conviction to be independently attacked, "refused to review the propriety of the sentence for the later conviction until the petitioner had filed an independent habeas attack on that conviction in the proper state district court."[28]

■ Thus, *Escobedo* does not undermine *Zales'* holding that a guilty plea to an enhancement charge waives subsequent challenges to the validity of the prior conviction set forth in the charge, and *Weaver*, de-

---

**23.** *Martinez v. Estelle,* 612 F.2d 173, 175 (5th Cir.1980).

**24.** 650 F.2d 70 (5th Cir.), *modified,* 655 F.2d 613 (5th Cir.1981).

**25.** *Id.* at 71.

**26.** *Id.* at 74 (discussing *Ex parte Harp,* 561 S.W.2d 180 (Tex.Cr.App.1978)).

**27.** *Id.* n. 10; *see also Carter v. Procunier,* 755 F.2d 1126 (5th Cir.1985).

**28.** *Id.* at 74.

spite its language, may be construed as permitting a direct and independent attack on the earlier conviction, after a "true" plea has been entered, only if that prior sentence is still being served. If the petitioner has not pleaded either "guilty" or "true" to the enhancement charge when presented with it, *Zales* is not applicable. In reaching this conclusion, we express no opinion concerning the permissibility of a direct attack on a prior conviction under which the petitioner is not presently incarcerated, after a "true" plea has been entered, in which the actual aim is not to undermine the enhanced sentence but is, rather, merely to avoid other collateral consequences of the prior conviction.

### III.

Long's primary argument on appeal is that the *Zales* line of decisions should be overruled because a conflicting rule was established by the Supreme Court in *Haring v. Prosise* [29] and *Menna v. New York.* [30] Long contends that in *Haring* and *Menna* the Supreme Court refined the guilty-plea-"waiver" doctrine, first established in the *Brady* trilogy,[31] to mean only that "a guilty plea admits nothing more than the *facts* necessary to establish criminal liability." Because *Zales* and the decisions that followed it are based on the *Brady*-trilogy doctrine, Long asserts that a "true" plea by a criminal defendant to an enhancement charge should now be construed as admitting only the fact that his record includes the convictions the State has invoked to enhance his punishment. Analogizing a plea of guilty to a charge to a plea of true to an enhancement count, Long contends that the reasoning of these Supreme Court cases precludes construing a plea of true as conceding anything about the constitutional validity of prior convictions or as

waiving any constitutional objections to the prior convictions. This argument, of course, disregards the fact that Long's plea was not simply an admission of the truth of the charge that there was a prior conviction on his record, but was entered in response to the charge that he had been *"duly and legally* convicted" of the prior charge.[32]

In any event, neither *Haring* nor *Menna* undermines the *Zales* doctrine. *Menna* holds that invocation of the double jeopardy clause on direct appellate review is not barred by a plea of guilty in the second prosecution because the State is precluded by the constitution from haling the defendant into court a second time. "[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute." [33]

The court in *Menna* discussed the *Brady*-"waiver" doctrine and stated that it did not "stand for the proposition that counseled guilty pleas inevitably 'waive' *all* antecedent constitutional violations." [34] The Court reasoned, however, that antecedent claims of constitutionality, such as fourth amendment claims, are properly deemed waived by a guilty plea because, in part, such claims do not necessarily or logically conflict "with the valid establishment of factual guilt." [35] Had the petitioner not pleaded guilty and, instead, put the State to its proof, the factual guilt of the defendant might still have been established despite the alleged constitutional violations.

■ Long asserts that this reasoning means guilty pleas operate only to admit the facts necessary to establish criminal liability and that, "true" pleas, in turn, should be construed as admitting only the fact that the prior conviction is part of the petitioner's record. We do not agree with

---

**29.** 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983).

**30.** 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam).

**31.** *See supra* note 5 and accompanying text.

**32.** *See supra* p. 6892.

**33.** *Menna,* 423 U.S. at 62 n. 2, 96 S.Ct. at 242 n. 2 (emphasis added).

**34.** *Id.,* 96 S.Ct. at 242 n. 2 (emphasis added).

**35.** *Id.,* 96 S.Ct. at 242 n. 2.

this premise or its supposed connection to enhancement pleas. *Menna* does not reject the *Brady* line of cases that hold guilty pleas, in effect, to constitute a waiver of some constitutional claims.

*Menna* instead holds that, when the constitutional claim asserted relates to the power of the court to try the defendant, it is not the type of claim that is waived. When double jeopardy is the defense, factual guilt is irrelevant to the establishment of his claim. Here, however, the invalidity of the prior conviction is essential to the establishment of Long's claim that the State cannot use the prior conviction for enhancement purposes. An acknowledgement of the truth of the charge that the defendant has been duly and legally convicted of a prior offense is no less a waiver of the right to have the State prove the facts alleged than it is in the context of a guilty plea. *Menna* does not require any reinterpretation of the *Zales* doctrine.

*Haring v. Prosise* provides Long with even less support. *Haring* considered only the effect of a plea of guilty on a later claim, under 42 U.S.C. § 1983, that police officers had obtained evidence illegally. Patently, a plea of guilty to a crime is not an admission of the legality of a search that led to the conviction,[36] and, just as clearly, "the justifications for denying habeas review of Fourth Amendment claims following a guilty plea are inapplicable to an action under § 1983." [37]

The Court in *Haring* again discussed the constitutional-waiver doctrine established in *Brady* and *Tollett v. Henderson* [38] and reiterated the reasoning behind the doctrine offered in *Menna* —a guilty plea "does not bar review in habeas corpus proceedings of all claims involving constitutional violations antecedent to a plea of guilty;" [39] a habeas claim that challenges "the very power of the State to bring the defendant into court to answer the charge against him" is not waived by a guilty plea; [40] and, finally, a guilty plea may, in effect, "waive" subsequent fourth amendment challenges on habeas review because, in part, such a claim "is irrelevant to the constitutional validity of the conviction." [41] The Court mentioned as other examples of the constitutional trial rights waived by a guilty plea the right to call witnesses, to confront and examine one's accusers, and to trial by jury.

"True" pleas like guilty pleas relieve the State of the duty to prove the facts alleged in the charge.[42] After such a plea is entered, the defendant is barred from bringing the State to task once again. *Zales* is controlling; we therefore do not consider Long's charge that his 1970 guilty plea was involuntary.

## IV.

■ Long also attacks his 1979 enhanced conviction on the ground that his 1979 true plea to the 1970 conviction was not knowing and involuntary. The issue was not raised in Long's *pro se* appellate brief, but was urged for the first time in the brief of counsel appointed to represent Long on appeal. The State argues that, because the claim was not raised in the district court, it is not properly before this court for review. Long counters that the issue was raised by the State itself when it moved in the district court for dismissal of Long's petition on the ground that Long had pleaded "true" to the enhancement allegations, thus putting in issue the voluntariness of the 1979 true plea. This defense, however, was not sufficient to put the matter of

---

**36.** *Haring,* 462 U.S. 306, 317, 103 S.Ct. at 2368, 2375 (1983).

**37.** *Id.* at 322, 103 S.Ct. at 2377.

**38.** 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

**39.** *Id.* at 320, 103 S.Ct. at 2376.

**40.** *Id.,* 103 S.Ct. at 2376 (quoting *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974)).

**41.** *Id.* at 321, 103 S.Ct. at 2377.

**42.** *See, e.g., Ex parte Sanders,* 588 S.W.2d 383 (Tex.Crim.App.1979); *Dinn v. State,* 570 S.W.2d 910 (Tex.Crim.App.1978).

voluntariness at issue, and the question of voluntariness was never addressed by Long, the State, or the district court.

▇▇▇ Long also contends that the State consented to trial of the issue, invoking Fed.R.Civ.P. 15(b),[43] but that rule applies only when evidence is adduced at trial relating to issues not raised by the pleadings. In this case there has been no trial. Voluntariness was not raised in the district court and we ordinarily do not consider issues that have not been presented to the court of first instance.[44]

▇▇ Whether Long is entitled to an evidentiary hearing on the voluntariness of his 1979 "true" plea, however, involves only a question of law that can be considered on the face of the record established in the federal and state courts. If we dismiss the claim, it will likely be resurrected in a new petition, followed by a new hearing, and a new appeal. Formal rules yield to manifest injustice, and such injustice may result from excessive litigation and repeated burdens on litigants, lawyers and courts. To avoid those results, we consider the issue.[45]

▇▇ Long asserts that his "true" plea was legally involuntary because he was not informed of its consequences: the state judge did not tell him that the true plea exposed him to mandatory life sentence. But when Long was arraigned, four days before his trial and five days before he pleaded true to the enhancement count, the state judge informed him that the 1979 charge was a felony for which, if found guilty, Long might be sentenced to imprisonment for not less than two years nor more than ten. The judge then informed Long that, if he were convicted of the 1979 felony and if the enhancement allegations were found to be true, "then the law imposes an automatic life imprisonment for the primary offense of theft." The judge asked Long if he understood the range of punishment and Long answered, "Yes, Sir." When Long pleaded "true" to the enhancement counts, the court inquired whether anyone had promised him anything, persuaded him, or forced him to plead "true." Long responded, "No, Sir." The judge asked whether his plea was his "own free will." Long answered, "Yes."

In *Boykin v. Alabama*[46] the Supreme Court held that a guilty plea to a criminal charge is "more than admission of conduct; it is a conviction."[47] Such a plea waives several federal constitutional rights, among them the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. To establish that a guilty plea was intelligently and knowingly entered the record must affirmatively reflect that the accused was informed of and waived these rights.[48]

In *Neyland v. Blackburn*[49] we recently considered, but did not decide, whether *Boykin* requires an affirmative showing in the trial court record that a defendant knowingly and intelligently entered an enhancement plea. We noted that other circuits have held that admissions at a recidivist hearing are the functional equivalent of a guilty plea and are, therefore, entitled to *Boykin*-like protection.[50] We hesitated

---

**43.** Rule 15(b) provides, in pertinent part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

**44.** *Vardas v. Estelle,* 715 F.2d 206, 208 (5th Cir. 1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984); *Lowery v. Estelle,* 696 F.2d 333, 336 & n. 5 (5th Cir.1983).

**45.** *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Volkswagen of America, Inc. v. Robertson,* 713 F.2d 1151, 1166 (5th Cir.1983).

**46.** 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

**47.** *Id.* at 242, 89 S.Ct. at 1712.

**48.** *See Walker v. Maggio,* 738 F.2d 714, 715–16 (5th Cir.1984).

**49.** 785 F.2d 1283 (5th Cir.1986).

**50.** *Id.* at 1290–91 (discussing *Wright v. Craven,* 461 F.2d 1109 (9th Cir.1972); *Cox v. Hutto,* 589 F.2d 394 (8th Cir.1979); *Government of the Virgin Islands v. George,* 741 F.2d 643 (3d Cir. 1984)).

in *Neyland,* however, to adopt such a doctrine, suggesting that "an approach ... which resolves the validity of such admissions under an effective assistance of counsel analysis rather than under the standards ordinarily applicable to accepting guilty pleas" might be preferable.[51]

The *Neyland* court found that "[i]n any event, the totality of the circumstances ... indicates that petitioner was aware of the consequences of his counsel's admission at the recidivist hearing and that his right to due process was not violated."[52] The same conclusion is compelled in this case.

In *Neyland,* as here, petitioner was represented by counsel at the multiple offender hearing. Further, the record in *Neyland* revealed that the petitioner was informed of the consequences of admitting the previous convictions during his guilty plea proceedings, which occurred shortly before the recidivist hearing. The same circumstances are present in this case. As stated previously, the record reveals that when Long was arraigned, five days before he entered his "true" plea, the state judge informed him that, if the enhancement allegations were found to be true, he would receive an automatic life sentence. Further, at the enhancement proceeding itself, the judge asked Long if his plea was voluntarily entered. Long answered in the affirmative.[53]

Long does not contend that his "true" plea was coerced or otherwise involuntary. He asserts only that it was not intelligently and knowingly entered because the record does not satisfy "the stringent due process requirements imposed by" *Boykin.*[54] Nothing can be gained by an evidentiary hearing because Long does not suggest he would adduce any evidence but the record. Considering the nature of the proceeding, the record shows that Long's due process

rights, even as interpreted under *Boykin,* were not violated.

For these reasons, the judgment is AFFIRMED.

---

**51.** *Id.* at 1291.

**52.** *Id., cf. Oyler v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 504, 7 L.Ed.2d 446 (1962).

**53.** *See Sylvester v. State,* 615 S.W.2d 734 (Tex. Crim.App.1981); *Harvey v. State,* 611 S.W.2d

108 (Tex.Crim.App.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981).

**54.** *Walker v. Maggio,* 738 F.2d at 716 (quoting *LeBlanc v. Henderson,* 478 F.2d 481, 483–84 (5th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974)).