UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 95-50188

LILLIAN FREEMAN,

Plaintiff-Appellant,

versus

COUNTY OF BEXAR, ET AL.,

Defendants,

JOHN JENNINGS, Individually and in his official capacity;
GEORGE SAIDLER, Individually and in his official capacity;

Defendants-Appellees.

*********************************

LILLIAN FREEMAN,

Plaintiff-Appellant,

versus

CITY OF SAN ANTONIO, ET AL.,

Defendants,

JOHN JENNINGS, Individually and in his official capacity;
GEORGE SAIDLER, Individually and in his official capacity;

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Western District of Texas
_____

May 29, 1998

Before JONES, SMITH, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Lillian Freeman appeals the district court's grant of summary judgment in favor of the appellees in her 42 U.S.C. § 1983 civil action. For the foregoing reasons, we reverse and remand to the district court.

## FACTUAL BACKGROUND

Appellant Freeman was arrested twice by the San Antonio Police Department for armed robberies which occurred June 4, 1991 and July 10, 1991 at two different San Antonio Credit Union ("SACU") branches. The police first arrested Freeman in July, 1991 after receiving an anonymous tip from one of her co-workers who claimed that the photo displayed on a local "Crime Stoppers" program resembled Freeman. Appellees Detective George Saidler and Officer John Jennings investigated the robberies on behalf of the San Antonio Police Department. Because both SACUs were national banks, agents from the Federal Bureau of Investigation were also investigating the crimes.

The FBI investigation revealed that Freeman was not involved in the robberies. In fact, two of the bank tellers who were robbed on June 4 could not identify Freeman in a photo array conducted by the FBI. However, in spite of having knowledge of this information from the FBI, Saidler and Jennings continued to investigate Freeman. Saidler obtained what he asserts was an

2

identification of Freeman from an eyewitness to the first robbery who had earlier been unable to identify her for the FBI. In his deposition for this case, however, Saidler admitted that witness Joy King did not make a positive identification. Detective Saidler also conducted a photo array before a group of people at Freeman's former place of employment. When comparing the bank surveillance camera photo with a photo of Freeman in her personnel file, employees expressed doubt as to whether the bank's photo was Freeman. Nevertheless, Detective Saidler wrote statements for the witnesses to sign indicating that they positively identified Freeman as the robber. None of the co-employees corrected or attempted to correct the statements before signing them.

Officer Jennings met with two tellers from the second SACU that had been robbed and showed them a surveillance photo taken in the first robbery. Jennings informed the witnesses that the person in the surveillance photo was Lillian Freeman. One of the witnesses identified the person in the surveillance photo as the person who had robbed her. Jennings took this to be a positive identification of Freeman.

Jennings and Saidler arrested Freeman a second time on October 10, 1991 in spite of FBI warnings that there was insufficient probable cause to arrest her for the two robberies. Subsequent to her arrest, a third robbery occurred in late November. Another woman, Carolyn Yvonne Butler, was federally

3

indicted for all three robberies and was convicted for the crimes in April, 1992.

In spite of Butler's arrest and conviction, Freeman was prosecuted in the state system until several weeks after Butler's conviction. Eventually, the Bexar County District Attorney filed a motion to dismiss charges against Freeman due to insufficient evidence.

Freeman filed suit in state court against Bexar County, the City of San Antonio, and a host of municipal employees in their individual and official capacities. The gist of Freeman's many claims was that she had been arrested without probable cause on two occasions for the two robberies. Freeman also alleged that the defendants had acted maliciously, willfully, and with specific intent to deprive her of her federal constitutional and state law rights. The case was removed to federal court, and pretrial proceedings were assigned to a magistrate judge.

In an exhaustive memorandum, the magistrate judge recommended that the defendants' several motions for judgment as a matter of law be granted. These included motions for judgment as a matter of law from Saidler and Jennings predicated on qualified immunity. In making her ruling, the magistrate judge held inadmissible the affidavit of Freeman's expert, Ray Hildebrand, a former San Antonio police officer, because it consisted almost entirely of legal conclusions unsupported by any facts and did not state which policies and procedures the officers violated.

4

Freeman, in response, submitted motions to compel discovery and for submission of additional evidence and timely objected to the magistrate judge's recommendation. She also filed a supplemental affidavit of her expert Hildebrand. The defendants opposed these efforts.

On February 16, 1995, the district court filed a memorandum opinion accepting the magistrate judge's recommendation. With respect to the supplemental affidavit of Hildebrand, the district court stated:

> Plaintiff attempts to support much of the rest of her objections with a supplemental affidavit of her expert, Ray Hildebrand. The Magistrate Judge concluded that his affidavit was not proper summary judgment proof because it consisted almost exclusively of legal conclusions unsupported by any facts. Mr. Hildebrand has fleshed out his supplemental affidavit considerably, analyzing each step in the investigative process taken by each officer and concluding how, in his opinion, that conduct violated City policies or fell short of proper investigative techniques. None of this, however, was presented to the Magistrate Judge. Although 28 U.S.C. § 631 [sic] provides for de novo review by the district court if timely objections are filed, it does not allow the parties to raise at the district court stage new evidence, argument, and issues that were not presented to the Magistrate Judge, absent compelling reasons. *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994). The affidavit will not be considered.

Freeman timely filed her notice of appeal. Pursuant to a motion by Freeman, the appeal was dismissed as to all parties except Jennings and Saidler.

5

## DISCUSSION

We review a district court's grant of judgment as a matter of law *de novo. See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992). Judgment as a matter of law is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Freeman asserts that, in refusing to consider the supplemental affidavit of her expert, Hildebrand, the district court deprived her of a ruling by an Article III judge on her case and, alternatively, abused his discretion. We do not reach the constitutional question as it is posed in this case because the district court mistook his authority to consider additional evidence. Freeman correctly cites 28 U.S.C. § 636(b)(1) to support her argument that the district court chould have accepted the supplemental affidavit:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1).

6

Two portions of the statute are relevant here. First, the district court makes a *de novo* determination upon those aspects of the magistrate judge's report to which objection has been made. Second, the court "may receive further evidence or recommit the matter to the magistrate with instructions." These phrases are carefully drafted to maximize the district court's authority to review and reconsider the magistrate judge's decision on an objected-to finding or recommendation. *See generally* 12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3076.8 (Supp. 1997).

FED. R. CIV. P. 72(b) implements and reflects the breadth of statutory discretion by providing:

**(b)  Dispositive Motions and Prisoner Petitions.**

\* \* \*

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Circuit courts differ on whether *de novo* review presupposes that, for purposes of judicial economy and efficiency, the record compiled before the magistrate judge is ordinarily conclusive; or whether *de novo* review entails consideration of an issue as if it had not been previously decided."[1]  In the latter

---

[1] *Compare Paterson-Leitch v. Mass. Mut. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (objector to magistrate

case, the Fourth Circuit permits parties who object to a magistrate judge's report to raise any new evidence or arguments they can muster before the district court.[2]  In these lines of authority clash the goals of maintaining procedural predictability and preserving Article III authority.  There is no doubt that district courts may, both constitutionally and by statute, assign magistrate judges to work on dispositive motions in a case, but the Article III judge must retain final decisionmaking authority.  *See United States v. Raddatz,* 447 U.S. 667, 681-82 (1980); *United States v. Dees,* 125 F.3d 261, 268-69 (5th Cir. 1997), *cert. denied, \_\_\_\_ U.S. \_\_\_\_,* 118 S. Ct. 1174 (1998).

This court, contrary to the district court's view, has issued only a limited ruling on the meaning of *de novo* review.  In *Cupit v. Whitley,* it was held that a party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge.  *See Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir. 1994), *cert. denied*, 513 U.S. 1163 (1995).  *Cupit* was a § 2254 habeas case arising from a murder conviction.  This court's waiver holding prevented the state from raising in the district court the legal defenses of procedural

---

judge's report is not "entitled as of right to *de novo* review by the judge of an argument [third-party beneficiary] never seasonably raised before the magistrate") *with  United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) ("the party entitled to *de novo* review must be permitted to raise before the [district] court any argument as to that issue that it could have raised before the magistrate").

[2]  *See George,* 971 F.2d at 1118.

default and failure to exhaust that it did not urge before the magistrate judge.

Cupit did not deal with the situation presented here: an attempt to amplify and add factual substance to the expert opinion affidavit ruled inadmissibly conclusory by the magistrate judge. Indeed, in a footnote supporting the waiver holding, Cupit cites one case concerning rules of appellate waiver[3] and one case in which a court prevented an entirely new claim for recovery from being raised for the first time in objection to the magistrate judge's report.[4]  A third supporting citation notes a district court's general holding that despite the court's de novo review power, the Magistrate Judges Act "does not allow the parties to raise at the district court stage new evidence, argument, and issues that were not presented to the Magistrate Judge -- 'absent compelling reasons.'"[5]

This last citation cannot mean much in the context of Cupit or as precedent for this circuit.  First, if Cupit intended to establish a "compelling reasons" test for any purpose, normally the court would have done so in the text of the opinion rather than in an obscure footnote reference.  Second, Cupit never mentions or applies that test to the state's newly raised defenses.  That is,

---

[3]See Cupit, 28 F.3d at 535 n.5 (citing Long v. McCotter, 792 F.2d 1338 (5th Cir. 1986)).

[4]See id. (citing Paterson-Leitch, 840 F.2d at 990-91).

[5]Id. (citing Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc., 747 F.Supp. 1299, 1302-03 (S.D. Ill. 1990)).

9

if the court believed compelling reasons could or could not be given for the state's delay in raising the defenses of exhaustion and procedural bar, the court would have said so. Third, because *Cupit* treats only legal issues, not evidentiary issues, its waiver holding -- irrespective of any "compelling reasons" gloss -- cannot apply beyond its narrow compass. Fourth, if *Cupit* attempted *sub silentio* to imply that waiver doctrines also apply to challenges to a magistrate judge's evidentiary findings or sufficiency of evidence findings, *Cupit* would conflict with the express authority conferred on the district court by statute and rule to "receive further evidence." 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). *Cupit* holds only that waiver may bar a party from raising new legal objections to the district court.

Shorn of its mistaken reliance on *Cupit*, the district court's decision to disregard Hildebrand's supplemental affidavit is insupportable. At least, the statute's authority for the court "to receive further evidence" in the course of *de novo* review of a magistrate judge's decision requires that discretion must be exercised. The court exercised no such discretion here. We must therefore describe the test for such exercise of discretion by the district court confronted with an objection to magistrate judge evidentiary findings and an offer of new or amplified evidence.

It is unnecessary to go as far as the Fourth Circuit in *George* and demand that *de novo* review treats an objected-to magistrate judge finding or recommendation as if it had never been

10

issued. This view appears inconsistent with § 636(b)(1) insofar as it transforms a permissive authority to receive new evidence into an arguable mandate. *Raddatz* indeed emphasizes -- as this court has done[6] -- the district court's obligation to review *de novo* the actual evidence on objected-to findings, but the district court should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge.

While we do not fully agree with the *George* approach, it is clear that the district court has wide discretion to consider and reconsider the magistrate judge's recommendation. In the course of performing its open-ended review, the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge. Litigants may not, however, use the magistrate judge as a mere sounding-board for the sufficiency of the evidence.

The best description of the district court's discretion is that it should be at least as broad as that conferred on the district court to determine motions for reconsideration of its own rulings. Our court carefully explained the scope of such discretion in *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990). *Lavespere* enunciated the considerations applicable to motions to alter or amend a judgment under FED. R.

---

[6]*See, e.g., Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 355-56 (5th Cir. 1980)*; United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980).

CIV. P. 59(e), *i.e.,* those served within ten days of the rendition of judgment:[7]

> That discretion, of course, is not limitless.  In any case in which a party seeks to upset a summary judgment on the basis of evidence she failed to introduce on time, two important judicial imperatives clash: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts.  The task of the district court in such a case is to strike the proper balance between these competing interests.  In order to do this, the court should consider, among other things, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before she responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.

*Id*. at 174 (citations omitted).

The fit between Rule 59(e) motions and *de novo* review of objections to magistrate judge recommendations is not perfect because somewhat different considerations attach to a court's review of its own work and its review of the work of its adjunct. But the general nature of the inquiry is the same, and this court's review of the exercise of that discretion, when it is exercised, must be generous.

Because the district court here mistakenly concluded that he had no discretion to consider additional evidence, we must

---

[7]*Lavespere* articulated different standards, founded on FED. R. CIV. P. 60(b), if the "motion to reconsider" is served more than 10 days after the order complained of.  Rule 59(e) furnishes a better model here, given the court's broad authority with respect to magistrate judge decisions.  (As an irrelevant aside, we note that after *Lavespere* was issued, rule 59(e) was amended to measure the 10-day filing period according to the motion's filing date rather its date of service.)

reverse and remand for his reconsideration in light of this opinion. We note that although Hildebrand's supplemental affidavit paints a detailed picture of alleged violations of San Antonio police department investigative policies, willful ignorance of contrary FBI conclusions, and an investigation arguably slanted to incriminate Ms. Freeman, the underlying facts contained in the affidavit were not unknown to Saidler and Jennings. It seems unlikely they could claim prejudice from Freeman's attempt to resurrect this expert testimony after it had been declared too conclusory. The supplemental affidavit also appears crucial to Freeman's case against the officers. On the other hand, Freeman stated no reason why the first Hildebrand affidavit lacked supporting details. All of this said, we do not prognosticate the district court's ultimate decision.

For the foregoing reasons, the judgment of the district court is **REVERSED** and the case **REMANDED** for further proceedings.