**Roland Wayne WRIGHT, Petitioner,**

v.

**Walter E. CRAVEN, Warden, Respondent.**

**No. 50677.**

United States District Court,
N. D. California.

March 25, 1971.

**1254**

Charles G. Miller, San Francisco, Cal., for petitioner.

Thomas C. Lynch, Atty. Gen. of State of Cal., San Francisco, Cal., Don Jacobson, Deputy Atty. Gen., for respondent.

## ORDER GRANTING WRIT OF HABEAS CORPUS

WOLLENBERG, District Judge.

An "habitch" in California prison parlance is an inmate subject to a mandatory life sentence following a finding of habitual criminality as defined by Calif.Pen.Code, § 644(b).[1]

Petitioner is an "habitch". A 1962 information, charging him with various offenses including robbery and carrying a concealed weapon, also recited six prior convictions suffered by him. Petitioner admitted the priors, following which a jury found him guilty of the principal offenses. On January 16, 1963, petitioner was sentenced as a recidivist.

At no time prior to sentencing was petitioner apprised in open court that he could be convicted as a recidivist. The information did not invoke § 644 (b), and petitioner's admission was taken without any reference to the fact that it left him open to a finding of habitual criminality. On the day of judgment, this finding was made and petitioner was sentenced to the term "prescribed by law". The term prescribed by Calif.Pen.Code. § 644(b) is imprisonment for life.

---

1. (b) Every person convicted in this State of the crime of robbery, burglary of the first degree, burglary with explosives, rape with force or violence, arson as defined in Section 447a of this code, murder, assault with intent to commit murder, train wrecking, felonious assault with a deadly weapon, extortion, kidnaping, escape from a state prison by use of force or dangerous or deadly weapons, rape or fornication or sodomy or carnal abuse of a child under the age of 14 years, or any act punishable under Section 288 of this code, conspiracy to commit any one or more of the aforementioned felonies, who shall have been previously three times convicted, upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison and/or federal penal institution, either in this State or elsewhere, of the crime of robbery, burglary, burglary with explosives, rape with force or violence, arson, murder, assault with intent to commit murder, grand theft, bribery of a public official, perjury, subornation of perjury, train wrecking, feloniously receiving stolen goods, felonious assault with a deadly weapon, extortion, kidnaping, mayhem, escape from a state prison, rape or fornication or sodomy or carnal abuse of a child under the age of 14 years, or any act punishable under Section 288 of this code, conspiracy to commit any one or more of the aforementioned felonies, shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life;

(c) Provided, however, that in exceptional cases, at any time not later than 60 days after the actual commencement of imprisonment, the court may, in its discretion, provide that the defendant is not an habitual criminal, and in such case the defendant shall not be subject to the provisions of this section or of Sections 3047 and 3048 of this code; * * *.

Petitioner alleges that his admission of the priors was the equivalent of a plea of guilty, that the plea was taken without any notice of the recidivism charge or of the effects of a finding of habitual criminality. Petitioner claims he did not know any of these things when he admitted the priors recited in the information. He alleges further that had he prior notice of the § 644(b) charge, he would have shown that at least two of the priors were constitutionally defective. He asks that his admission of the priors be set aside.

The Court issued an Order to Show Cause on September 17, 1969, heard oral argument by the Attorney General on March 20, 1970, and following this ordered a full evidentiary hearing. Mr. Charles Miller of San Francisco was appointed to represent petitioner, which function Mr. Miller has performed eloquently and ably. The hearing was held on November 6. The body of petitioner was produced, and testimony was heard from petitioner, the judge who presided at his 1962 trial, his defense attorney, and from the Deputy District Attorney who had acted as prosecutor.

Perhaps surprisingly, petitioner-defendant proved to be in substantial agreement with his one-time counsel, prosecutor, and judge. The prosecutor affirmed that it was not the custom of his office to automatically seek a determination of recidivism whenever appropriate priors were charged, but that in the instant case a decision had early been made to ask for such a finding. He said that normally defense counsel would be told informally of this decision, but that he had no memory of having done so in the instant case.

Counsel for the defense, now himself a Superior Court judge, testified that prior to sentencing he thought of the alleged priors only as regarded their possible prejudicial effect on the jury. "I was not familiar with the habitual criminal statute * * * and had never represented anyone in that situation. * * * I don't remember discussing it with defendant." The admission of the priors was seen solely as a device to prevent their being read to the jury as part of the information. "I don't believe I ever discussed the recidivist statute with him before or after trial. * * * my later correspondence with defendant had nothing to do with it. * * * I was not thinking in terms of sentence, rather of acquittal."

The trial judge remembered no discussion of the recidivism finding with defense counsel, though he testified to his practice of advising counsel of his intentions on the day of sentencing. He added that it was never the custom to advise a potential recidivist of the effect of admitting the priors with which he was charged.

Roland Wright, the seasoned convict, admitted having heard of "big habitches" and "little habitches", but testified to his inability to give any precise definition of the phrases, other than that they referred to persons serving long terms for committing "a lot of all one certain kind of crime". He added that he has often tried to attack collaterally his having been declared an habitual criminal, but admitted that he raised "all the wrong issues". He concluded that he never knew that the statute was being invoked against him until the day of sentencing and had he known he never would have "pleaded to an automatic life sentence".

Various exhibits before the Court indicate that petitioner on other occasions was charged with, and admitted, prior convictions, but that he had never had the recidivism statute raised against him. Nor did the presentence report entered after the 1962–63 trial alert him to the possibility of an habitual criminality finding.

The above testimony and documentary evidence amply supports a finding, which the Court now makes, that petitioner, at the time that he admitted the priors charged against him, had not been informed by the Court, by his attorney, or by the prosecution that he

was subject to conviction as a recidivist. Petitioner did not learn of the consequences of his admission until the day he was sentenced.

But facts, though certainly found, do not make the law of this case. It is not yet clear whether an admission of priors in a context of habitual criminality is to be judged by the standards applied to pleas of guilty in other areas. California argues that prior convictions do no more than increase punishment, are in themselves notice of this fact, and in no way constitute a separate offense. Also doubtful is the standard applicable even if the admission is to be treated as a guilty plea. Finally, the Court must consider issues raised by California's own particular way of handling the recidivism issue.

■■ A finding of habitual criminality has been called an adjudication of status, and not of guilt as to a separate offense. Cuomo, Mens Rea and Status Criminality, 40 So.Calif.L. Rev. 463 (1967); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). But the effects on a defendant of such a finding are so drastic that trial of the issues raised by a charge of recidivism has been called an independent proceeding to which most of the incidents of traditional due process apply. The defendant may demand a full "judicial hearing" on the validity of any of the priors charged; he may insist on his right to representation by counsel; and he must have adequate notice of the State's invocation of its recidivism statutes. Chandler v. Fretag, *cit. supra;* Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Johnson v. Kansas, 284 F.2d 344 (10 Cir. 1960); Tucker v. Craven, 421 F.2d 139 (9 Cir. 1970); see also

People v. Newton, 8 Cal.App.3d 359, 87 Cal.Rptr. 394 (1970).

■ An admission of priors is as telling in many ways as any guilty plea. Normally, the State must prove alleged priors beyond a reasonable doubt. People v. Niles, 227 Cal.App.2d 749, 39 Cal.Rptr. 11 (1964). There is no such burden as to priors which are admitted. People v. Herod, 112 Cal.App.2d 764, 247 P.2d 127 (1952). Ordinarily, the State must defend and affirmatively show the validity of those priors which the defendant claims are invalid for constitutional or other reasons. With an admission, validity is no issue, either at trial or on appeal. People v. Womack, 252 Cal.App.2d 761, 60 Cal.Rptr. 870 (1967). Nor with an admission need there be any showing of the nature of the priors (a most significant issue when foreign convictions are alleged) or of the sentences imposed and served. Bevins v. Klinger, 365 F.2d 752 (9 Cir. 1966). Hence an admission of prior convictions waives a wide range of rights, and may, as here, leave one defenseless against invocation of a statute which carries a mandatory life sentence.

■ California's treatment of an admission of priors as a waiver of various rights places such an admission on a par with pleas of guilty, which, if knowingly and voluntarily made are now seen as working a forfeiture of a vast range of rights, procedural and substantive. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). If the plea or admission is valid, it serves to insulate even unconstitutional state action from subsequent review. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L. Ed.2d 763 (1970); Oyler v. Boles, *cit. supra.*[2]

2. In *Oyler,* petitioners claimed they would have raised defenses to the priors if given a chance, but the Court, having found that they had adequate notice and an opportunity to be heard at the time of their admission of the prior convictions, treated that admission as a waiver of the right to raise substantive defenses. Similarly, in Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed. 2d 274 (1970), a plea of guilty is described as "more than an admission of conduct; it is a conviction".

■ This Court concludes that an admission of prior convictions in the context of California's habitual criminality statute is the functional equivalent of a plea of guilty to an independent criminal charge.

■ The effects of this conclusion fall even-handedly on both sides herein. The defendant who admits the priors charged against him will be deemed to have waived nearly all rights later to question their validity. But the harshness of this result is mitigated by one, fragile principle: waiver must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences". Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Guilty pleas must be both "voluntary" and "intelligent". Brady v. United States, *cit. supra*, 397 U.S. at 747, 90 S.Ct. 1463. "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

The weighty consequences which the courts now attach to guilty pleas are constitutionally justified only because of the procedural safeguards which have been erected about the taking of such pleas. Failure by a trial judge, federal or state, to follow the litany prescribed by Rule 11 of the Federal Rules of Criminal Procedure is now seen to be an omission of constitutional proportions. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); see Tigar, Foreward: Waiver of Constitutional Rights: Disquiet in the Citadel, 84 Harv.L.Rev. 1 (1970).

The Court indulges in this legal peregrination so as to reach the crux of petitioner's case. Respondents treat "notice" as a simple question of opportunity to be heard on the validity of the

priors. Calif.Pen.Code, § 644(c) has been interpreted to allow, "in exceptional cases, at any time not later than 60 days after the actual commencement of imprisonment", the trial court to reconsider a finding of habitual criminality. In re Ponce, 65 Cal.2d 341, 54 Cal.Rptr. 752, 754, 420 P.2d 224 (1966) (note 4 and accompanying text). California argues that petitioner did not avail himself of § 644(c), and that he can therefore in no way be said to have been denied an opportunity to be heard on the recidivism charge.

It is difficult to assume that § 644(c) would have allowed a full review of *all* the issues involved in petitioner's recidivism proceeding, including identity, validity of the priors, and the suitability of lifetime incarceration. In re Ponce, *cit. supra,* does not go this far, and the statute itself seems to be reserved to "exceptional cases". At best, § 644(c) establishes an analog of the appeal procedures available to criminal defendants, and the availability of such appeal procedures has not affected the vitality of those cases which require a "full understanding of the charges * * * and the possible consequences of [the] plea". There is more to this, then, than "opportunity to be heard". A guilty plea is now seen as an act of tremendous moment, performed by a person fully informed, not only as to his own guilt or innocence, but as to the strength of the case against him, the strategic alternatives open to him, and the sentence which is likely to await him upon conviction. Brady v. United States, *cit. supra,* 397 U.S. at 748, 90 S.Ct. 1463; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1969). The fact that any misapprehension as to the charges, or as to defenses available, or as to the sentence to be imposed, *might* be cured via appeal or a motion to modify sentence has never been seen to render unnecessary a showing of voluntariness and full knowledge at the time of plea.[3]

3. California's Supreme Court has said, in a case coming after Oyler v. Boles, but antedating recent guilty pleas decisions, that § 644(c) is sufficient "opportunity to

If this were a post-*Boykin* plea, the Court would have no difficulty; the record herein at no place shows an in-court warning of the recidivism charge, and of the penalties attached thereto, or advice of the rights foregone by virtue of an admission of the priors. *Boykin*, though, is not retroactive, and the Court must search outside the record for evidences of the requisite knowledge. See Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). Certain presumptions arise because petitioner was represented by competent counsel at the time of plea. McMann v. Richardson, *cit. supra*; Diamond v. United States, 422 F.2d 1313 (9th Cir. Sept. 18, 1970). But petitioner here has overcome those presumptions. His admission of the priors has been found to have been the legal equivalent of a plea of guilty to a "charge" under the recidivism statute, and the Court has concluded that petitioner had no knowledge, at the time of the admission, of the decision to invoke the statute against him. *A fortiori*, petitioner could not have known that the chief consequence of his plea was not, as he

thought, simply to prevent details of the priors from going to the jury, but was to make him subject to a mandatory life sentence. The Fourth Circuit has granted relief, on constitutional grounds, to a recidivist who was not told of West Virginia's mandatory life sentence provision in recidivist cases, even though the relevant statute *was* cited by the information to which the petitioner had pleaded. Mounts v. Boles, 326 F.2d 186 (4 Cir. 1963); see also Crabtree v. Boles, 339 F.2d 22 (4 Cir. 1964). The Ninth Circuit has found that "one who, at the time of entering a plea of guilty, is not aware of the fact that he will not be eligible for probation or parole, does not plead with understanding of the consequences of such a plea". Munich v. United States, 337 F.2d 356, 361 (1964). Here neither the information, nor defense counsel, nor the trial judge, nor the pre-sentence report mentioned the statute and its heavy penalty. The admission should be set aside.

Accordingly, it is hereby ordered that a writ of habeas corpus issue, that the admission by petitioner of the prior convictions recited in the 1962 information

be heard" under the *Oyler* rule. "[Petitioner and his counsel] did not seek to avail themselves of the opportunity and therefore were not denied it." In re Ponce, *cit. supra*, 54 Cal.Rptr. at 754, 420 P.2d at 226. The *Ponce* argument troubles this Court for several reasons:

(1) It was made by way of dictum, in that petitioner's recidivism argument had been found moot.

(2) For reasons stated herein, it is doubtful, under the most recent guilty plea cases, whether petitioner can resurrect constitutional or procedural arguments on appeal or via § 644(c). This assumes, of course, that this Court is correct in concluding that petitioner's admission was the equivalent of a plea of guilty.

(3) Even if a motion under § 644(c) could comprehend all issues in a recidivism finding, the Court is not unaware that a defendant's earlier admission of the priors charged would result in considerable burden shifting, and that in many cases the proverbial bell could not be unrung.

(4) The *Ponce* argument is implicitly based on waiver and/or forfeiture princi-

ples; i. e., by not presenting his constitutional or other defenses within sixty days, the petitioner is deemed to have waived them for evermore. Because of the extreme gravity of a § 644 determination, the Court, as noted herein, will only presume waiver upon a showing that petitioner, "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his * * * claims in the state courts". Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed. 2d 837 (1963). West Virginia's system, which provides for the filing of a specific information prior to sentencing, and for counselled, in-court proceedings *subsequent* thereto, is such that waiver is more easily implied from a failure to present arguments to the Court. Such a system also makes reasonable a presumption of knowledge at the time the defendant is called upon to admit or controvert the priors invoked against him. Oyler v. Boyles, *cit. supra*, 368 U.S. at 454, 82 S.Ct. 501. California's system is, as the Court finds today, considerably different.

be set aside, that the finding of habitual criminality predicated upon said prior convictions be set aside, and that respondents shall not make use of said finding to adversely affect either petitioner's eligibility for parole, or to set his minimum and/or maximum release dates.

Execution of this Order shall be stayed ten days from the date of filing thereof to allow the state to file notice of appeal if it so desires; further stays will be considered only upon timely application to the court.