Clarence BUCKLEY, Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, et al., Respondents-Appellees.

No. 87–3151
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1987.

---

John T. Mulvehill, Federal Public Defender, Robert F. Barnard, Asst. Federal Public Defender, New Orleans, La., for petitioner-appellant.

Michael E. McMahon, Terry Boudreaux, Asst. Dist. Attys., New Orleans, La., for respondents-appellees.

Before CLARK, Chief Judge, and GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Clarence Buckley ("Buckley") appeals the district court's dismissal of his petition for a writ of habeas corpus. Buckley was convicted in a Louisiana state court of armed robbery, and his term of imprisonment was enhanced under that state's multiple offender statute. Appellant claims that the state court did not warn him, before he admitted his prior conviction, of the effect of his admission. We affirm the denial of habeas relief.

I.

In the spring of 1980, appellant was charged in a three-count information with three offenses—two armed robbery charges and one attempted armed robbery charge—each committed in March 1980.

One offense was severed and tried before a jury; on June 26, 1980, the jury convicted appellant of that one count of armed robbery. On July 7, 1980, appellant appeared for sentencing and fifteen years' imprisonment was imposed.

Two days later, on July 9, following the Louisiana procedure authorizing charging and proving prior criminal convictions in sentence enhancement proceedings formally separate from the related prosecution of the subsequent offense, LSA–R.S. 15:529.-1D, the state filed a "multiple bill" information alleging that Buckley had been convicted of felony simple robbery in the same parish in September 1975. A multiple offender hearing was held that same day, during which appellant admitted the prior conviction both personally and through his attorney, the same counsel who had represented him in the June 26 trial and the July 7 sentencing. This proceeding was in the same court, and before the same judge, with the same prosecutor, as those of June 26 and July 7. Pursuant to the enhancement statute, the court vacated appellant's fifteen-year sentence and imposed a thirty-three-year sentence, the minimum enhanced sentence—one-third of the maximum—allowable under the statute, with credit for time served. That same day, just following the multiple bill proceeding, in the same court, before the same judge, and with the same prosecuting attorney representing the state, appellant, represented by the same counsel, also pleaded guilty to simple robbery and attempted simple robbery as lesser included offenses under the two counts of the information still pending against him, and was sentenced to serve a seven-year term on one count and a three-and-one-half-year term on the remaining count, with these sentences to run concurrently with the thirty-three-year term of imprisonment already imposed.

The transcript of the July 9 proceedings demonstrates that appellant was advised of the rights he waived by pleading guilty and of the effect of his guilty pleas to the lesser simple robbery charges, meeting the requirement of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), that the record affirmatively show a guilty plea was intelligent and voluntary. The transcript also shows, however, that this occurred only on the subject of the guilty pleas respecting the two other counts and only *after*, albeit just after, appellant had admitted his prior conviction. The admission in question took place as follows (emphasis added):

"BY THE COURT: Mr. Fanning [the prosecutor], do you want to file your Multiple Bill now?

"BY MR. FANNING: Yes, Your Honor, ... Clarence Buckley case.

"BY THE COURT: Let that be filed. *You've received a copy of it Mr. Gaudin* [trial attorney for appellant]?

"BY MR. GAUDIN: *Yes*, Your Honor.

"BY THE COURT: *Are you ready to go forward with this now*?

"BY MR. GAUDIN: *Yes*, sir.

"BY THE COURT: What's your pleasure in this, Mr. Fanning? *What would ya'll like to do*?

"BY MR. FANNING: I believe *Mr. Gaudin stated that his client will admit that he is the same person.*

"BY MR. GAUDIN: Your Honor, *I have discussed this matter at length with my client*, Mr. Buckley. I have shown him originally the bill of information wherein he was represented by counsel and this bill of information was signed on the 23rd day of April, 1975. This is a copy of his records [*sic*] in the clerk's file. The District Attorney [referred to in the 1975 records] has signed this bill and this was dated May 13th, 1974 [*sic*]. Now, *I've shown this to Mr. Buckley. He remembered this and this is a true and correct bill that you entered a plea of guilty to*?

"BY MR. BUCKLEY: *Yes.*

"BY MR. GAUDIN: [Describing the contents of the transcript of the earlier proceeding in some detail, noting Buckley had signed a form indicating he waived his constitutional rights and pleaded guilty.]

"Now he has been apprised of this and I read it to him and *he agrees that this is a true copy of the transcript and the*

*proceedings that took place* in that Courtroom on that particular date. *Is that correct, Mr. Buckley?*

"BY MR. BUCKLEY: *Yes,* sir.

"BY THE COURT: *Let me see everything.*

"BY MR. FANNING: There's also a boykin [*sic*] form.

"BY THE COURT: Let's mark all of these for identification.

"BY MR. FANNING: State's Exhibit S–1 would be the bill of information. State's Exhibit S–2 the transcript and State's Exhibit S–3, the plea of guilty form.

"BY THE COURT: *All right. Let me look at this gentlemen.* Is there anything else that the State wants to—

"BY MR. GAUDIN: There are two other charges.

"BY THE COURT: We're going to come to that, Mr. Gaudin. Let's get through with this and then we'll talk about the other charges.... *Let me look at this, gentlemen. Just have a seat for a couple of moments.*

"Anything else from the State?

"BY MR. FANNING: Nothing.

"BY THE COURT: Anything else from the Defense?

"BY MR. GAUDIN: No, sir.

"BY THE COURT: Is there anything your client would like to say?

"BY MR. GAUDIN: Nothing at all. *We're willing to let the two records stand as is and so presented with the Court and filed with the Court.*

"BY THE COURT: *This Court does find that the defendant* is a Multiple Bill Offender and more particularly *a second felony offender* in the eyes of the law.

"Therefore, the original sentence imposed by this Court is vacated and set aside. Now, is the defendant ready for sentencing?

"BY MR. GAUDIN: Yes, Your Honor.

"BY THE COURT: It's the sentence of this Court that the defendant be committed to Louisiana State Department of Corrections at hard labor for a term of thirty-three (33) years, with credit for time served from March 14th, 1980 until the present date, and the Court Costs are waived due to the technical indigency of the defendant.... I've given my reasons for the imposition of the original fifteen (15) years and those reasons I feel are sufficient to justify a sentence of fifteen (15) years, and very little more. But this Court has no alternative but to follow the law as it is written and to impose this sentence.

"BY MR. GAUDIN: *The defendant at bar, Mr. Buckley, understands the Court's position ....*

"BY THE COURT: I have no alternative but to give thirty-three (33) years which is one-third of the maximum term which becomes a minimum on a second conviction.

"Now, this concludes this with the exception, Mr. Buckley, you have a right to appeal in this case. You can take your case to a higher Court now for review to the Supreme Court. *If you're desirous of an appeal you have fifteen days from today to let us know if you want an appeal. Do you understand that?*

"BY MR. BUCKLEY: *Yes.*

"BY THE COURT: Okay. You can do it in writing or however you want to do it, through your attorney, but you have to let us know within fifteen days of today.

"Now, *we still have counts 1 and 3 open.* Do you want to talk to your client now?

"BY MR. GAUDIN: *I've already discussed that matter with him and also with the District Attorney.* I would suggest, with the permission of the Court, that we proceed accordingly. *Mr. Buckley understands what we're doing.*

"BY THE COURT: He wants to plead guilty to these to simple robbery?

"BY MR. GAUDIN: Yes, simple robbery."

Thereafter, the court proceeded to fully advise Buckley concerning and to accept his guilty pleas to the lesser included simple robbery charges under the other two counts of the information.

In 1983, appellant, proceeding *pro se,* filed his first application for federal habeas

attacking his 1980 conviction of armed robbery and the enhancement of his sentence for that offense, the latter claim being based on the assertion the 1975 simple robbery conviction was not a proper basis for enhancement because it was based on a guilty plea that "was not done in accordance with the requirements of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709 [23 L.Ed.2d 274] (1969)," and because "[t]he State failed to sustain its burden of proof ... that the defendant (your petitioner herein) had been properly advised of his constitutional rights as set out in *Boykin.* Specifically, the State did not show that petitioner had been properly advised of," or had knowingly and intelligently waived, his constitutional rights against self-incrimination, to confrontation of witnesses, and to trial by jury. The district court dismissed that petition with prejudice, finding as follows on the claim respecting use of the 1975 conviction for enhancement:

"In his last ground petitioner submits that his adjudication as a multiple offender violated the United States Constitution for the reason that the State failed to prove that he was properly advised of his rights to trial, to confrontation of witness[es], to be free of self-incrimination, and that he had knowingly and intelligently waived these rights. A review of the transcript of Buckley's 1975 plea of guilty firmly establishes that he was advised of and knowingly waived the rights guaranteed to him by the Constitution and was fully aware of the consequence of his guilty plea, *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). This ground is clearly without merit."

Buckley appealed and we affirmed in an unpublished opinion, *Buckley v. Maggio,* 717 F.2d 1397 (5th Cir.1983) (table), stating in this regard:

"Finally appellant urges that his prior conviction for simple robbery was invalid and should not have been used to enhance his sentence. He claims the court at that time did not advise him of his rights to trial by jury and confrontation of witnesses, and also his right against self-incrimination. This contention is ful-

ly refuted by Buckley's signed waiver of his enumerated rights and the transcript of the plea proceedings in the state record."

### II.

Appellant filed, *pro se,* the instant petition on August 1, 1986, challenging his enhanced sentence not on the basis of any defect in his 1975 plea of guilty or the proof of its voluntariness at the enhancement proceeding, as his first petition had claimed, but, instead, on the ground that his admissions respecting the prior conviction were not intelligent and voluntary because the state court failed in 1980 to advise him of the rights he was waiving by, and the sentencing consequences arising from, his admissions that he was convicted in 1975 of simple robbery and that the tendered transcript and records in respect of his 1975 conviction accurately described what they purported to describe. After petitioner filed his traverse to the state's response, counsel was appointed to represent him and filed a memorandum on his behalf below. Thereafter, the district court concluded that appellant's second petition should be dismissed on the basis of abuse of the writ and, in any event, lacked merit. Represented by counsel on this appeal, appellant challenges both conclusions.

### III.

As we agree with the district court's ruling on the merits, we pretermit consideration of the abuse of the writ question.

*Boykin* held that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that [the plea] was intelligent and voluntary." *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). In *Boykin,* the Supreme Court wrote that the waiver of three critical rights—to trial by jury, to confront one's accusers, and against compulsory self-incrimination—cannot be presumed "from a silent record." *Id.* at 1712.

Even in its guilty plea context, however, *Boykin* requires only "an affirm-

ative showing" on the record and does not "require that the *judge* explicitly inform the defendant of these three rights before accepting a guilty plea." *Barksdale v. Blackburn*, 670 F.2d 22, 25 (5th Cir.) (emphasis added and deleted) (citing *Brown v. Jernigan*, 622 F.2d 914, 915 (5th Cir.), *cert. denied*, 449 U.S. 958, 101 S.Ct. 368, 66 L.Ed.2d 224 (1980)), *cert. denied*, 457 U.S. 1109, 102 S.Ct. 2912, 73 L.Ed.2d 1319 (1982); *see also Neyland v. Blackburn*, 785 F.2d 1283, 1287 (5th Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986). While a guilty plea attacked in post-conviction proceedings as having been involuntary will not be presumed voluntary where the plea record is silent, nonetheless in those circumstances the claim of involuntariness may be rebutted by post-conviction testimony that defense counsel had in fact informed the accused of his rights. *Brown*, 622 F.2d at 915–16. Moreover, we have held that where it appears the accused was generally advised of his rights, the failure to make express, specific reference to the privilege against self-incrimination or to a jury trial, as opposed simply to trial, does not invalidate a conventional guilty plea. *Neyland*, 785 F.2d at 1288.

In *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Court addressed a situation where the accused, charged with first degree murder, pleaded guilty to the lesser included offense of second degree murder which, though never formally charged, required a finding that the accused acted " 'with a design to effect the death of the person killed.' " *Id.* at 2258. There was nothing in the record to indicate that the accused personally was aware, or had ever been informed, either by the wording of the charge (as there was no second degree murder charge) or by the prosecution, the court, or his counsel, that second degree murder required an intent to kill. The Court further observed that the record contained "no indication that the nature of the offense had ever been discussed with" the accused. *Id.* at 2256. The accused was "19 years old and of substantially below average intelligence." *Id.* Prior to trial, defense counsel unsuccessfully attempted

to negotiate a reduction of the charge to manslaughter, which did not involve an intent to kill, and at sentencing argued that the accused " 'meant no harm to' " the victim when he entered her room and that " 'the assault occurred and as a result ... [the victim] met her death' " only " 'in the excitement and tension of it all' " when the victim started screaming and would not stop. *Id.* at 2256, 2257 n. 11. The Court observed that "[t]he jury would have been entitled to accept defense counsel's appraisal of the incident as involving only manslaughter in the first degree." *Id.* at 2258. On federal habeas, the district court made the unchallenged finding that defense counsel did not explain to the accused the required intent element of second degree murder. In that habeas proceeding, the accused testified that he would not have pleaded guilty had he known intent was a required element of the offense. While no finding was made on that issue, the Supreme Court assumed "that he probably would have pleaded guilty anyway." *Id.* at 2257 n. 12. The Court likewise refused to fault counsel's strategy of recommending a plea to second degree murder rather than running the serious risk of a first degree murder conviction. *Id.* Nevertheless, the Court sustained the grant of federal habeas relief, stating:

"*There is nothing in this record that can serve as a substitute for either a finding after trial, or a voluntary admission*, that respondent had the requisite intent. *Defense counsel did not purport to stipulate* to that fact; they did not explain to him that his plea would be an admission of that fact; and *he [the accused] made no factual statement or admission* necessarily implying that he had such intent....

" . . . .

"*Normally the record contains* either an explanation of the charge by the trial judge, or at least *a representation by defense counsel that the nature of the offense has been explained* to the accused. Moreover, *even without such an express representation, it may be appropriate to presume* that in most cases

defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent. Moreover, respondent's unusually low mental capacity provides a reasonable explanation for counsel's oversight; it also forecloses the conclusion that the error was harmless beyond a reasonable doubt, for it lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder." *Id.* at 2258–59 (emphasis added).

Like *Boykin*, *Henderson* involved the voluntariness of a plea of guilty to an offense, not, as here, the admission of a prior conviction in a recidivist proceeding. "[T]his Circuit has never addressed the question of whether the admission of prior felonies in a recidivist hearing is the functional equivalent of a guilty plea" for purposes of *Boykin*. *Neyland*, 785 F.2d at 1290; *see also Long v. McCotter*, 792 F.2d 1338, 1345 (5th Cir.1986) (noting the question remains open).[1] In pertinent decisions involving multiple offender proceedings, we heretofore have found that the record indicated the defendants' admissions of prior convictions were informed and voluntary to a degree that would satisfy *Boykin* even if we were to assume *arguendo* that the requirements set forth in *Boykin* were fully applicable.

The sequence of events in this case in some respects parallels that of *Long, supra*, in which appellant Long first was convicted by a jury, then multiple billed and, in the latter proceeding, pleaded "true" to the multiple bill. 792 F.2d at

1339–40, 1344–46 (discussing Long's challenge to his 1979 plea). In *Long*, however, "five days before [the defendant] pleaded true to the enhancement count [based on a 1970 conviction], the state judge informed him ... that, if he were convicted of the 1979 felony and if the enhancement allegations were found to be true, 'then the law imposes an automatic life imprisonment for the primary offense of theft.' The judge asked Long if he understood the range of punishment and Long answered, 'Yes, Sir.' When Long pleaded 'true' to the enhancement counts, the court inquired whether anyone had promised him anything, persuaded him, or forced him to plead 'true.' Long responded, 'No, Sir.' The judge asked whether his plea was 'his own free will.' Long answered, 'Yes.'" *Id.* at 1345.

In *Long*, we concluded that, even if *Boykin* standards were applied to the multiple offender hearing, Long's due process rights had not been violated. *Id.* at 1346.

Similarly, in *Neyland, supra*, the trial court advised the accused of the consequences of a multiple bill twenty-two days before the defendant admitted to being a multiple offender. 785 F.2d at 1285–87. Thus, in both *Long* and *Neyland* the defendants were warned from the bench before they admitted their prior convictions.

Here, in contrast, there is no indication in the record that the court advised appellant of his rights or of the consequences of his admission. Discussing the decisions of other Circuits on this issue in *Neyland*, 785 F.2d at 1289–91, we concluded:

"Where admissions of prior convictions are made by counsel at a state multiple bill proceeding closely related, temporal-

---

**1.** We observe that LSA–R.S. 15:529.1D provides that the court "shall inform" the defendant "of the allegation contained in the [multiple bill] information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." Here the judge did not expressly do any of these things. Louisiana courts have reversed multiple bill proceedings *on direct appeal* where the trial court did not comply with the requirement of informing the defendant "of his right to be tried as to the truth thereof." *See State v.*

*Walker*, 432 So.2d 1057, 1060 (La.App. 3d Cir. 1983); *State v. Vincent*, 439 So.2d 1124, 1127 (La.App. 4th Cir.1983), *writ denied*, 472 So.2d 913 (La.1985). However, the Louisiana Supreme Court has declined to apply the *Boykin* analysis to multiple bill proceedings. *State v. Martin*, 427 So.2d 1182, 1184–85 & n. 7 (La. 1983); *see also Walker* at 1060; *but see Vincent* at 1127 (the warning specified by section 15:529.1D is "probably also" required by *Boykin*).

ly and functionally, to a proper and counseled prior guilty plea, we believe that there is much to recommend an approach for purposes of federal habeas relief which resolves the validity of such admissions under an effective assistance of counsel analysis rather than under the standards ordinarily applicable to accepting guilty pleas." *Id.* at 1291.

In the instant case, the admission occurred in a "proceeding closely related, temporally and functionally" to, but *before,* "a proper and counseled ... guilty plea." However, the multiple bill proceeding was also closely related, temporally and functionally, to the prior trial of the armed robbery count, and the same defense counsel, prosecutor, court, and judge were involved in each. Indeed, the information charging the armed robbery count was finally disposed in connection with, and immediately after, the multiple bill proceeding. In substance, the multiple bill proceeding was not separate or distinct, but rather represented merely the final part of the proceedings on the armed robbery count on which Buckley had been convicted less than two weeks, and had been initially sentenced only two days, previously.

Under Louisiana law, multiple bill proceedings do not charge a crime, but are merely a part of the sentencing *for the subsequent offense.* As the Louisiana Supreme Court explained in *State v. Walker,* 416 So.2d 534, 535–36 (La.1982):

"La.R.S. 15:529.1 provides that a district attorney may file an information charging a defendant, after conviction as a multiple offender if he has prior conviction(s). However, this additional bill of information is merely a method of informing the court of the circumstances and of requesting an enhancement of the penalty to be imposed. *State v. Alexander,* 325 So.2d 777 (La.1976); *State v. Jackson,* 298 So.2d 777 (La.1974). More particularly, this proceeding does not charge a new crime but is merely a method of increasing the punishment of second and subsequent offenders. The enhancement of the penalty for habitual offenders convicted of a new felony only addresses itself to the sentencing powers of the trial judge after conviction and has no functional relationship to the innocence or guilt of the instant crime. See *State v. Stott,* 395 So.2d 714 (La.1981); *State v. Alexander, supra.* In other words, it is clear that the sentence imposed in such cases is for the new crime only; it is simply more severe if the defendant is a habitual offender. *State v. Stott, supra.*"[2]

■■■ We recognize that simply because the multiple bill proceeding relates only to the *sentence* for the new crime of which the defendant has been convicted does not mean that the accused has no due process or other constitutional rights at the multiple bill proceeding. *See Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Nevertheless, it is clear that at sentencing the accused does not have the full panoply of due process and other constitutional protections which attend the determination of guilt or innocence. *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 3163–65, 82 L.Ed.2d 340 (1984); *Williams v. New York,* 337 U.S.

---

**2.** Similarly, our late lamented colleague Judge Albert Tate, while a Justice of the Louisiana Supreme Court, wrote for that court as follows in *State v. Alexander,* 325 So.2d 777, 779 (La. 1976):

"A proceeding to enhance the penalty of a convicted defendant because of prior convictions does not charge him with a crime: it is merely a method of increasing the punishment for second and subsequent offenders. [Citations omitted.]

"... [T]he enhancement of the penalty for habitual offenders convicted of a new felony addresses itself to the sentencing powers of

the trial judge after conviction. The post-conviction enhanced-penalty proceedings have no functional relationship to the innocence or guilt of the crime for which prosecution is initiated...."

*See also Price v. Allgood,* 369 F.2d 376 (5th Cir.1966), *cert. denied,* 386 U.S. 998, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967).

We also observe that Louisiana law requires these enhancement proceedings to be brought within a reasonable time following conviction for the second offense. *State v. Broussard,* 416 So.2d 109 (La.1982).

241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Davis*, 710 F.2d 104, 106 (3d Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983). Moreover, this is true even though the sentencing proceeding may involve the determination of particular matters given specific sentencing significance under the law. *See McMillan; Spaziano* (statutory aggravating circumstances); *Davis*. Even in these circumstances, as the above authorities reflect, there is no Fifth Amendment right to grand jury indictment on the sentencing facts, nor any Sixth Amendment right to their determination by a petit jury, nor a due process requirement that they be established beyond a reasonable doubt or even by clear and convincing evidence.

■ We do not suggest that these principles are without limit, or that legislatures may without restriction take elements which are in reality part of the offense and make them instead part of the sentence, thus negating constitutional rights which would otherwise obtain. But the absence of any "bright line" test in this respect does not authorize us to disregard the fundamental differences between sentencing and guilt determination. *See McMillan*, 106 S.Ct. at 2419. We have no doubt that states may properly classify general recidivist statutes of this kind as relating only to the sentencing for the repeat offense. While the fact that the operation of such statutes often increases both the minimum and maximum sentences is a consideration somewhat militating in favor of treatment similar to an offense element, nevertheless we believe that other contrary considerations are decisive. Such statutes are, and have historically been, generally recognized as sentencing statutes, not as separate offense statutes. They plainly involve no

legislative attempt to evade constitutional rights. Moreover, they have no relation to the circumstances of the wrongdoing constituting the most recent offense, but rather to something which is wholly unrelated thereto. Further, they do not relate to determining what the accused has done, but rather to what the state has *previously* determined that he has done. And that previous determination must have been a formal, *judicial* determination of *guilt;* and hence one as to which the full measure of constitutional protections was available. The scheme of the statutes, therefore, cannot properly be understood as intended or calculated to infringe on the rights attending determination of whether the accused has engaged in criminal conduct.

■ Obviously, *Boykin* cannot be applied literally to this sort of proceeding. The accused cannot be advised that he has a right to trial by jury, for he may have no such right.[3] Here, as we have noted, the multiple bill proceedings were closely related, temporally and functionally, to the armed robbery conviction and the initial sentence thereunder, and in substance represented but the final part of those proceedings. The accused's counsel, who had represented him throughout, advised the court at the multiple bill proceeding, in the presence of the accused, that "I have discussed this matter at length with my client," and then proceeded to go over with Buckley the records of his 1975 conviction. These records were introduced in evidence.[4] The court considered them, as the transcript reflects. They adequately show not only the fact of the prior felony conviction,[5] but also, as we directly held on Buckley's prior federal habeas, that his 1975 conviction was constitutionally obtained. That Buckley had a previous felony conviction, then,

**3.** As noted, the Sixth Amendment does not so require. *McMillan; Spaziano.* The right to a jury in recidivist proceedings is left to state law. In Louisiana there is no provision for a jury trial. Section 15:529.1D provides for enhancement "[i]f the judge finds" the requisite prior conviction.

**4.** The state court's minute entry for July 9 reflects in reference to the multiple bill proceeding that *"Counsel for the State filed into the record a prior conviction and attending documents,* marking same as S–1, bill of informa-

tion, S–2, transcript and S–3, a plea of guilty form." (Emphasis added.) The Louisiana bill of information forms contained in the record of this appeal (the 1980 three-count information and the "multiple bill" information) each includes the defendant's fingerprints; appellant does not assert that exhibit "S–2" (the bill of information from the 1975 conviction) lacked such fingerprints. *See infra* note 5.

**5.** While these documents may not meet the requirements of LSA–R.S. 15:529.1F, they are not for that reason incompetent or no evidence of

was *not* determined merely on the basis of a general, conclusional "plea" by him that he was "guilty" of being a second felony offender, for he made no such plea, but rather by the records of his 1975 felony conviction, and by his directly counseled admission of the discrete, concrete, objectively verifiable fact that he was, indeed, the same person as the identically named individual referenced in those records. It cannot be doubted that Buckley knew what he was admitting and intended to admit it. *Compare Henderson v. Morgan, supra.* Nor can it be doubted that he had previously been advised by counsel in this respect. There is no suggestion of anything involuntary about Buckley's *factual* admissions in response to the questions by his own counsel. Moreover, the facts admitted are of the kind that generally can be clearly proved with relative ease absent admission.[6] Consequently, we hold that to the extent that *Boykin*-type requirements may

be applicable in proceedings of this kind, the record here is sufficient to facially satisfy them.[7] Buckley's claim that it is not is rejected. The record here does not demonstrate a denial of due process. *Cf. Oyler v. Boles, supra.* [8]

The record does not show precisely what advice Buckley's counsel gave him in reference to the multiple bill, and accordingly, though Buckley has not so claimed, it is theoretically possible that his counsel's advice was so erroneous or inadequate as to have denied him the adequate assistance of counsel to which he was entitled under the Sixth Amendment. But, as we intimated in *Neyland,* such a contention should be resolved under an ineffective assistance of counsel analysis.[9] *See, e.g., Cook v. Lynaugh,* 821 F.2d 1072, 1078 (5th Cir.1987). We recognize that an ineffective assistance of counsel claim (except in instances where counsel is in effect no counsel at all) requires a showing of prejudice, *Cook,* while

---

the prior conviction. We observe that in *State v. Bernard,* 366 So.2d 1294, 1297 (La.1978), the Louisiana Supreme Court stated:
"This court has held, however, that the proof set forth in R.S. 15:529.1F is neither sacramental nor the exclusive method of proving that defendant is a habitual offender, and the necessary facts constituting proof that the accused is an habitual offender may be established by other competent evidence.... [Citations to seven Louisiana Supreme Court opinions.] In a habitual offender proceeding the state is only required to establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *State v. Curtis,* 338 So.2d 662, 664 (La.1976); *State v. Washington,* 322 So.2d 185, 188 (La. 1975)."

6. We observe that under LSA–R.S. 15:529.1D, if the defendant "denies the allegation of the information or refuses to answer or remains silent ... the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information." Here the record strongly suggests that the state would have had no difficulty proving Buckley's less than five-year-old Louisiana felony conviction in the same parish; nothing in the record suggests otherwise, nor has Buckley.

7. We further observe that Buckley has not made any assertion that facts outside the record demonstrate that his factual admissions were involuntary, such as that he was threatened with violence or promised by the judge a more lenient sentence or the like. Nor has he ever claimed that he is not the person of the same

name convicted in September 1975 of felony simple robbery, as reflected in the records of that conviction.

8. In *Oyler,* the Court unanimously rejected a due process challenge to admissions of prior convictions by defendants who were represented by counsel at the multiple offender proceeding:
"The petitioners' claim that they were deprived of due process because of inadequate opportunity to contest the habitual criminal accusation must be rejected in these cases. Each of the petitioners had a lawyer at his side, and neither the petitioners nor their counsel sought in any way to raise any matters in defense or intimated that a continuance was needed to investigate the existence of any possible defense. On the contrary, the record clearly shows that both petitioners personally and through their lawyers conceded the applicability of the law's sanctions to the circumstances of their cases." 82 S.Ct. at 505.

9. Buckley relies on *Wright v. Craven,* 461 F.2d 1109 (9th Cir.1972), *aff'g* 325 F.Supp. 1253 (N.D. Cal.1971); *Cox v. Hutto,* 589 F.2d 394 (8th Cir. 1979); and *Government of the Virgin Islands v. George,* 741 F.2d 643, 648–49 (3d Cir.1984). We considered all of these cases at length in *Neyland,* 785 F.3d at 1290–91. In *Wright,* defense counsel testified at the habeas hearing that he had not discussed the recidivist statute with the defendant, and the latter was not aware that he was subject to being sentenced as a recidivist. 325 F.Supp. at 1255–56. That is obviously not the case here. In *Cox,* defense counsel's stipula-

such a showing is not required if a conviction of an offense rests on nothing more than an involuntary plea of guilty. *Henderson v. Morgan, supra.* However, as noted, here we are concerned not with a guilt or innocence, but rather with a sentencing, determination. And, in the circumstances of this case, we believe that the imposition of a prejudice requirement, in connection with any claim of misadvice or inadequate advice by counsel, is appropriate to the same extent as in other ineffective assistance of counsel claims. *Cf. Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Cook.* However, no claim of ineffective assistance of counsel has been made in these proceedings, and, of course, we make no ruling thereon.

## CONCLUSION

Accordingly, the district court's denial of Buckley's habeas petition is affirmed.

AFFIRMED.

tions were alleged to have been made without the defendant's consent, 589 F.2d at 395 (no such allegation has been made here), and the nature of the remand—to determine prejudice by determining whether the state could have otherwise proved the prior felonies, *id.* at 397— is consistent with an ineffective assistance of counsel analysis. *George,* was a direct appeal, looked to Fed.R.Crim.P. 11 for guidance, and invoked "our supervisory power over the District Court." 741 F.2d at 649, 650. These considerations are inapplicable in proceedings under 28 U.S.C. § 2254. *Cf. United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Moreover, all these cases— *Wright, Cox,* and *George* —were decided prior to *McMillan* (and prior to *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and, *George,* excepted to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We are not persuaded that these decisions dictate a contrary result here.