UNITED STATES of America,
Plaintiff–Appellee,

v.

Curtis Lee BREWER, (86–6155), James Phillip Brewer, (86–6156), Giles Erwin Ferguson, (86–6157), Defendants–Appellants.

Nos. 86–6155 to 86–6157.

United States Court of Appeals,
Sixth Circuit.

Argued July 27, 1987.

Decided Feb. 26, 1988.

John T. Hennis (Court-appointed) (argued), Chattanooga, Tenn., for James Phillip Brewer.

Timothy A. Deere (Court-appointed) (argued), Chattanooga, Tenn., for Giles Erwin Ferguson.

Before ENGEL, MERRITT, and KRUPANSKY, Circuit Judges.

MERRITT, Circuit Judge.

The first sentence of the federal criminal

firearms law, 18 U.S.C. App. § 1202,[1] limits the maximum sentence to two years for felons who possess guns. The question before us in this direct criminal appeal is whether the second sentence of § 1202, which increases the penalty for recidivists,[2] enumerates only sentencing "enhancement" facts that need be shown only at the sentencing hearing and need not be alleged in the indictment under the Fifth Amendment[3] nor established beyond a reasonable doubt under the Sixth Amendment.[4]

■ This question is presented because the government did not charge in the indictment or attempt to prove at the defendants' jury trial their previous convictions. After finding the requisite facts concerning recidivism at the sentencing hearing, the District Court imposed a minimum sentence of fifteen years without parole. We hold that under *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and traditional principles concerning notice and proof of crimes, the second sentence of § 1202 creates an offense the elements of which must be charged in the indictment and proved in the liability portion of the criminal trial rather than simply established at the sentencing hearing.

In *McMillan*, Pennsylvania had adopted a new mandatory minimum sentencing statute requiring not less than five years imprisonment for a number of offenses if the defendant "visibly possessed a firearm during the commission of the offense." All of the offenses subject to the mandatory sentencing statute (*e.g.*, murder, rape, and robbery) were already serious crimes providing for maximum sentences substantially in excess of the five year mandatory minimum for use of a firearm. The Pennsylvania legislature expressly provided that the firearms factor which triggers the mini-

mum firearm sentence is "not an element of the crime" to be charged and proved in order to establish criminal liability but is a sentencing enhancement fact to be shown at a sentencing hearing after conviction.

The Supreme Court, 5 to 4, upheld the Pennsylvania law because "it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." 106 S.Ct. at 2418. The majority suggested, without holding, that the result would be different if "a finding of visible possession exposed them [the defendants] to greater or additional punishment." *Id.* The four dissenters viewed the firearms factor as a necessary element of the offense to be charged and proved beyond a reasonable doubt under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), even though the minimum sentence remained within the maximum allowed for the crime. Therefore, it appears that all nine members of the Court would require notice in the indictment and proof beyond a reasonable doubt of a fact that increases the punishment beyond the maximum set by the legislature for the other elements of the offense. The majority and dissenting opinions in *McMillan* discuss at length the constitutional considerations and history concerning notice and proof of crimes that lead to this conclusion. We need not repeat that discussion here.

■ In the case at bar the crime charged in the indictment and proved by the government at the jury trial of the three defendants was the lesser firearms offense carrying a maximum of two years.

1. This section was repealed effective 180 days after May 19, 1986. *See* 18 U.S.C.A.App. § 1202 (1987 Supp.). It reappears in modified form in 18 U.S.C.A. §§ 922(g), 924(e) (1987 Supp.).

2. This sentence provides that "a person who ... possesses ... in commerce ... any firearm and ... has three previous convictions ... for robbery or burglary ... shall be ... imprisoned not less than 15 years" without eligibility for parole.

3. The Fifth Amendment states "no person shall be held to answer" for an "infamous crime unless on ... indictment of a Grand Jury...."

4. The Sixth Amendment states "[i]n all criminal prosecutions the accused shall enjoy the right to" trial "by an impartial jury."

After the conviction of this offense by the jury, the court "enhanced" the sentence at the government's request to a minimum of fifteen years without parole under the second sentence of § 1202 because it found each defendant also guilty of three previous convictions for robbery or burglary. This the Court may not do under the reasoning of *McMillan* because the prison sentence imposed exceeds the maximum prison sentence permitted for the crime charged in the indictment. A court may not constitutionally increase the level of punishment beyond the level permitted for the crime charged in the indictment and proved in the liability phase of the case. Therefore, we reverse the sentence imposed by the District Court and remand the case for resentencing within the maximum for the crime charged in the indictment.

Our holding conflicts with *United States v. Gregg*, 803 F.2d 568 (10th Cir.1986), — U.S. —, *cert. denied*, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987), *United States v. Hawkins*, 811 F.2d 210 (3d Cir.1987) *cert. denied*, — U.S. —, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Jackson*, 824 F.2d 21 (D.C.Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 506, 98 L.Ed.2d 665 (1988); and *United States v. West*, 826 F.2d 909 (9th Cir.1987), which, except for a fleeting reference in *Hawkins*, 811 F.2d at 220, do not mention *McMillan* or indicate an awareness of its existence as a precedent. Judge Rosenn, in a cogent dissent in *Hawkins*, points out that the analysis in *McMillan* is controlling and requires notice by indictment and proof at trial because § 1202(a) "raises dramatically the minimum penalty and lacks any explicit language denominating it a sentencing factor rather than an element of the offense." 811 F.2d at 224 (Rosenn, J., dissenting). The holdings in these four cases that the second sentence of § 1202 provides merely for "sentencing enhancement" by the court after conviction are inconsistent with the Supreme Court's reasoning in the *McMillan* case. It seems clear under *McMillan* that an offense "which identifies conduct the legislature specifically intended to punish by a special sanction," 106 S.Ct. at 2426 (Stevens, J., dissenting), must

also be charged if it "exposes" defendants "to greater or additional punishment" than the conduct in fact charged in the indictment, 106 S.Ct. at 2418 (majority opinion). Judge Rubin's opinion in *United States v. Davis*, 801 F.2d 754 (5th Cir.1986), which conflicts with *Gregg, Hawkins, Jackson* and *West* on this point, is consistent with the *McMillan* reasoning. We agree with *Davis* and Judge Rosenn's dissent in *Hawkins*. We note that the Eighth Circuit is considering this issue *en banc*. *See United States v. Cloyd*, 819 F.2d 836, 838 (8th Cir.1987).

The dissenting opinion of our brother, Judge Krupansky, mistakenly states that the legislative intent is clear that federal courts should not require notice by indictment and proof at trial of the additional elements of the crime under consideration here. Although he is right that some members of Congress referred to the bill as providing only for an "enhanced" or "stiffer sentence for career criminals," the drafters of the bill as introduced and considered in committee said: "The bill creates a new Federal crime of carrying a firearm ... where a defendant has two prior felony convictions for robbery or burglary." S.Rep. No. 190, 98th Cong., 1st Sess. at 3 (1983). It is not clear what Congress thought about the question before us, and our search for evidence of legislative intent on this subject has disclosed nothing we would consider helpful. Neither do we think our brother's argument concerning the prejudicial effect on the jury of the prior felonies is convincing in light of the availability of a bifurcated trial if necessary to avoid prejudice, *see Spencer v. Texas*, 385 U.S. 554, 566–68, 87 S.Ct. 648, 654–56, 17 L.Ed.2d 606 (1966), and in light of the fact that many statutes now require notice and proof of prior crimes as elements of the offense, *see, e.g.,* (RICO) 18 U.S.C. §§ 1961(5), 1962(c) and 18 U.S.C. § 1737 (second offense of mailing pornography).

■ The defendants also contest the search of the trunk of their car, in which firearms and burglary tools were found. The three defendants, and a fourth individ-

ual who later confessed that they were travelling to Georgia to commit a burglary, had rented a car in Nashville and were travelling through Chattanooga. The intuition of a detective specializing in burglary offenses, Del Thomasson of the Chattanooga Police Department, led him to suspect that the four might be engaged in criminal conduct because of the way they looked and the fact that their rental car seemed weighted down in the trunk. He and a partner stopped the car and observed four pairs of gloves of a type sometimes used in burglaries, a book with police radio frequencies, and a police radio scanner. Later a set of alligator clip jumper wires, sometimes used to bypass burglar alarms, were observed. Because of these items and the general appearance of the defendants and the car, the officers decided to seek a search warrant for the trunk after the defendants refused to open it. A state judge issued the warrant based on these facts, and the firearms and numerous burglary tools were found in the trunk.

The question is whether there was probable cause, or reasonable grounds to believe, that the defendants were engaged in criminal conduct. Although the probable cause is thin for the issuance of a search warrant, the jumper wires tip the equation in favor of the state magistrate's decision. Detective Thomasson did not have to establish his suspicion by a preponderance of the evidence. He had to establish that he had reasonable grounds to believe the defendants were engaged in criminal conduct.

The Supreme Court has underlined this distinction, which is central to the probable cause determination. As the Court stated in *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983):

> Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." (citation omitted)

The gloves, wires, and police scanner and manual, taken together with the other suspicious circumstances noted by Detective Thomasson, push the case across the line of probable cause. We therefore decline to suppress the items of evidence offered at the trial as a result of the search.

In light of our disposition above, we need not reach the *Leon* issue raised by the Government: since there is probable cause to support the issuance of the warrant, we can avoid falling back on any good-faith reliance on the warrant by the officers. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). For the same reason, we need not reach the argument raised by the Government that certain defendants, as passengers in the car, lack standing to challenge the search. We have reviewed the other issues raised by the defendants and find them to be without merit.

Accordingly, the judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

KRUPANSKY, Circuit Judge, concurring in part, dissenting in part.

I concur with the majority's resolution of all issues presented by this appeal with the exception of its interpretation of 18 U.S.C. App. § 1202, the Armed Career Criminals Act (ACCA). This appellate review of the ACCA presents an issue of first impression in this circuit, and challenges this court to determine if the government is specifically required to charge in the indictment and prove at trial a defendant's prior convictions pursuant to the mandate of the ACCA. Under that section, a felon who possess firearms may be sentenced to a maximum of two years *unless* he has been convicted for committing three prior felonies. Three-time recidivists are subject to imprisonment for a period of not less than fifteen years without eligibility for parole.[1]

---

1. The pertinent section of the ACCA reads as    follows:

In the instant case, the prior convictions of the vulnerable defendants were not specifically charged or proved during trial. However, on July 4, 1986, prior to the commencement of their trial on the charges of the indictment, they were each formally noticed that the government would seek enhanced sentencing pursuant to 18 U.S.C. App. § 1202 (ACCA). The notice which preceded the September 9 trial by more than a month listed in detail the previous convictions upon which the ACCA charge was anchored.[2] Defendants were convicted subsequent to a jury trial. At their respective presentencing hearings neither the defendant Ferguson nor defendant Brewer disputed the government's proof and conceded their respective three prior felony convictions which mandated an enhanced sentence.[3]

Thus, any demurrer to the enhanced sentences in the instant case could not be predicated upon insufficient or vague notice-related due process concerns. Appellants had received proper notice and were not prejudiced by the government's use of the enhanced sentencing procedure.[4]

Accordingly, because I am firmly convinced that it was not the intention of Congress in promulgating the ACCA to create a separate offense mandating the government to specifically plead in its indictment and prove at the trial in chief the required recidivism of the accused that triggers the enhanced sentencing statute, and because

of my opinion that the Supreme Court decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), is alien to the resolution of the issue joined in the instant case, I must respectfully dissent from the majority's disposition.

Initially, I am prompted to arrive at this conclusion by a review of the Congressional history which reflects upon the intent that embraced the promulgation of the ACCA.

To support its decision charging ambiguity of Congressional intent in the enactment of the ACCA the majority cites to S.Rep. No. 190, 98th Cong., 1st Sess. at 3 (1983) and correctly quotes the statement attributed to "drafters" of the legislation during the 1983 Committee hearings announcing that "The bill creates a new Federal crime of carrying a firearm ... where a defendant has two prior felony convictions for robbery or burglary". The majority analysis characterizing the dubious Congressional motivation behind enactment of the ACCA that arose as a result of the 1983 Committee hearings during the 1st Session of the 98th Congress when it considered the adoption of the ACCA is not entirely unwarranted. Indeed, those hearings accorded considerable consideration to the necessity for bifurcating the trial of an accused on charged substantive offenses from the trial on proof of his recidivist career to avoid the acknowledged highly

"a person who ... possesses ... in commerce ... any firearm and ... has three previous convictions ... for robbery or burglary ... shall be ... imprisoned not less than 15 years without eligibility for parole."
Note that this section was repealed as of 180 days after May 19, 1986, but applies to the prosecution in question.

2. This court need not reach the issue of whether such procedures were constitutionally required.

3. In his supplemental brief and during the sentencing hearing, Brewer challenged three prior convictions that occurred when he was a juvenile and alleged that one was for attempted burglary, which was not a crime listed as one the ACCA would consider in sentence enhancement. Nonetheless, three of his six convictions remained unchallenged and that was sufficient to invoke the ACCA provisions. Additionally,

Brewer attempted to argue that one of the crimes in the Notice was for "breach of trust" (which was not an ACCA offense) rather than for burglary. However, it was apparent from the evidence presented during the sentencing hearing that Brewer was convicted of *both* breach of trust and burglary, the breach of trust conviction having occurred in 1976 and the burglary conviction having occurred in 1972.

4. *See United States v. Hawkins,* 811 F.2d 210, 220 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987):
... [t]here was adequate notice given by the government of its intention to seek enhanced penalties against Hawkins under the Armed Career Criminal provision. Such notice was filed two months before trial, stated the government's intention to request increased punishment under the provision and listed in detail the prior convictions relied therein.

prejudicial effects inherent in proof of recidivism during the trial in chief, which prejudicial effects purportedly attached to the 1983 proposed legislation. *Armed Career Criminal Act of 1983: Hearing on S. 52 Before the Committee on the Judiciary of the United States Senate*, 98th Cong., 1st Sess. at 20 (1983) (statements of Senator Spector and James Knapp, Deputy Assistant Attorney General); S.Rep. No. 190, 98th Cong., 1st Sess. at 4.

The legislation as originally introduced in both branches of the Congress in 1983 was abandoned and its demise also laid to rest the charges of ambiguity which plagued the underlying purpose of the proposed enactment.

In describing its decision to abandon the 1983 version of the recidivist provisions of the ACCA, the House Report which accompanied substitute bill H.R. 6248, 98th Cong. 2d Sess. (1984) announced, in certain terms, its underlying motivation for the substitute legislation:

In *"enhancing"* this offense [§ 1202(a)] with H.R. 1627–type sanctions, if the defendant has been convicted three times of robbery or burglary, we are *"enhancing"* an existing Federal crime, which would alleviate many of the problems associated with H.R. 1627 such as the issue of a local D.A. veto or the difficulties encountered by Federal courts in applying ‘State robbery and burglary laws in Federal prosecutions. (emphasis added).

H.R.Rep. No. 1073, 98th Cong.2d Sess. 5, *reprinted in* 1984, U.S.Code Cong. & Admin.News p. 3182 at 3665.

Any lingering doubts as to the Congressional intention concerning the 1984 substitute legislation were dispelled by Congressional expressions from the political leadership in both the House and Senate.

Substitute bill—H.R. 6248, 98th Cong., 2d Sess. 1984—was adopted by the House Judiciary Committee and it was this legislation that formed the basis for the ACCA as finally enacted into law. Here again, the approach taken by H.R. 6248 was clear from the record of proceedings which explained:

Under this approach, if the local authorities arrest a three-time loser in possession of a gun ... and can convince the U.S. Attorney that circumstances warrant prosecution *under the enhanced penalty provision of this bill,* the mandatory 15–year penalty is available. (emphasis added).

Similar sentiments were voiced during the floor debates by Representative Hughes, the principal sponsor of the substitute 1984 legislation who stated:

H.R. 6248 which we have before us is another, and, I believe, useful approach to this problem. This *bill would enhance the sanctions* of 18 U.S.C.App. Section 1202(a) with a 15–year minimum sentence if the defendant has been convicted three times of felonies for robbery or burglary. (emphasis added).

and Representative Sawyer who stated:

The proposal before us today is crafted to avoid Federal prosecution of State burglary or robbery charges. *This proposal does not even expand Federal criminal law.* H.R. 6248 *takes an existing gun possession statute and enhances the penalty for* any violation by a person having been previously convicted three times for armed burglary and robbery.

H.R. 6248 would apply *the enhanced penalties* of a fine of not more than $25,000 or imprisonment of not less than 15 years, or both, in addition to the penalties for the underlying offense. These penalties would be applied to anyone possessing a firearm in violation of section 1202(a) to title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.App. 1202(a)). This person must have three previous convictions for burglary or robbery. (emphasis added).

130 Cong.Rec.H. 10550 (Daily Edition October 1, 1984).

The clear and concise expressions voiced in the House were echoed by the Senate leadership in debating the 1984 substitute legislation which was ultimately adopted. During the Senate debate, Senator Specter, the principal sponsor of substitute Senate Bill 52, stated in no uncertain terms that:

This bill *would create no new Federal crime.* Under present section 1202(a), possession of a firearm by a convicted felon is already a Federal crime, with a maximum prison sentence of 2 years. This title would *simply provide for a stiffer sentence for career criminals.* (emphasis added).

130 Cong.Rec.S. 13080 (Daily Edition October 4, 1984).

This purpose was reaffirmed by Senator Thurmond, then Chairman of the Judiciary Committee, who was joined by Senators Biden and Kennedy in tendering an amendment to Senate Bill 52, who stated:

Special provisions applicable to this offense would permit danger to the community to be considered in making bail decisions, *make the prior convictions a matter solely for the judge before the trial without requiring allegation in the indictment or proof at trial;* and require the sentence imposed to be served in full.

\* \* \* \* \* \*

Thus, the *enhanced penalties would be* available if a person with two prior Federal or State robbery or burglary convictions were charged with a Federal offense—for example, robbery of a federally insured bank or a post office. (emphasis added).

130 Cong. Record S. 1563 (Daily Edition, Feb. 23, 1984).

In light of the emphatic reflections of the entire Congress not to promulgate recidivist legislation that would create a new Federal crime to be separately charged and proved at trial, but rather to enact a statute that would delegate sentencing authority to a trial judge to enhance the sentence of a recidivist offender, I am constrained to refrain from legislating by judicial decree and recasting the intended purpose of the ACCA and would join the well-reasoned dispositions of the Tenth Circuit in *United*

States v. Gregg, 803 F.2d 568 (10th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987), the Third Circuit, *United States v. Hawkins,* 811 F.2d 210 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987), the D.C. Circuit, *United States v. Jackson,* 824 F.2d 21 (D.C.Cir.1987), the Fourth Circuit, *United States v. Blannon,* 836 F.2d 843 (4th Cir.1988) and the Ninth Circuit, *United States v. West,* 826 F.2d 909 (9th Cir.1987), in their conclusion that the ACCA is merely a sentencing enhancement statute.[5]

Apart from the clarion declarations of Congressional intent disclosed by the 1984 Congressional debates preceding the enactment of the ACCA, accepted standards of statutory construction lend support to the conclusion that § 1202(a) does not create a separate indictable offense but constitutes a sentencing enhancement provision that need not be independently pleaded or proved at trial. As noted by the Third Circuit in *Hawkins:*

[t]he second sentence of section 1202(s), which constitutes the whole of the Armed Career Criminal provision, is evidently a continuation of the preceding sentence, and refers thereto.

The first sentence of section 1202(a), which is set forth in full in the accompanying margin so that its language and structure can be examined, lists the five classes of persons for whom it is a crime to receive, transport or possess firearms: (1) felons; (2) dishonorable dischargees; (3) mental incompetents; (4) renounced citizens; and (5) illegal aliens. The second sentence specifies one of the preceding classes of persons for different treatment. It does not stand on its own, but as an expansion of the preceding provision. Also, the inclusion of the Armed Career Criminal Act into the same paragraph as the previously enacted section 1202(a)(1), with no division into separate

---

5. Apart from the dissent in *Hawkins,* the Fifth Circuit decision in *United States v. Davis,* 801 F.2d 754 (5th Cir.1986), which conveniently ignored the Congressional intent behind the ACCA, is the single decision that supports the majority view expressed herein. The vitality of *Davis* is in doubt. In *Buckley v. Butler,* 825 F.2d

895 (5th Cir. Aug. 27, 1987), that Circuit has specifically concluded that a Louisiana sentencing enhancement statute similar to the ACCA was constitutional and that the recidivism that triggered enhancement under the statute was not required to be pleaded or proved at trial.

numbers or letters suggests treatment of the contents as a single offense.

*Hawkins,* 811 F.2d at 218–19 (footnote omitted).

Moreover, on its face, § 1202(a) tracks the language of numerous other federal criminal statutes which have been regarded as enhancers rather than separate offenses. Indeed, one court has described the ACCA as containing "language that is typical of" a sentencing enhancement provision. *Jackson,* 824 F.2d at 24 (comparing the ACCA to 21 U.S.C. § 848(a)(1), a recidivist statute). Countless decisions have interpreted language virtually identical to that in the ACCA and have concluded that such language indicated a congressional intent to enhance sentencing. *See United States v. Patterson,* 820 F.2d 1524, 1526 (9th Cir. July 7, 1987) (18 U.S.C. § 3147—sentencing for those who commit offense while released on bail—is sentence enhancement, not separate offense); *United States v. Soto,* 779 F.2d 558 (9th Cir. 1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987) (dangerous special offender statute is merely enhancement); *United States v. Haley,* 758 F.2d 1294, 1298 (9th Cir.), *cert. denied,* 474 U.S. 854, 106 S.Ct. 158, 88 L.Ed.2d 131 (1985) (special dangerous offender statute). *See also, States v. Scarborough,* 777 F.2d 175 (4th Cir.1985) (same); *United States v. Towers,* 775 F.2d 184 (7th Cir.1985) (interpreting 21 U.S.C. § 849(b), special dangerous drug offender sentencing); *United States v. Adams,* 771 F.2d 783 (3d Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985) (18 U.S.C. § 3575); *United States v. White,* 748 F.2d 257 (5th Cir.1984) (same); *Cf. Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3281–82 n. 7, 87 L.Ed.2d 346 (1985) (describing 18 U.S.C. § 3575(e) as enhanced sentencing provision); *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 2413, 87 L.Ed.2d 698 (1985) (construing 21 U.S.C. § 848 continuing criminal enterprise's recidivist provision as not creating a separate offense since it only referenced prior convictions and did not refer to conduct proscribed by another statute); *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (describing provisions for using dangerous or deadly weapon under 18 U.S.C. § 111, relating to assaulting officer, and 18 U.S.C. § 924(c), relating to use of firearm in committing felony, as enhanced penalty provisions for double jeopardy purposes).

I am also concerned that the interpretation of the ACCA urged by appellant would "require the government to place evidence of a defendant's three prior felony convictions before the jury in any proceeding under the ACCA. The inherently prejudicial nature of this kind of evidence is well-known." *Jackson,* 824 F.2d at 25. "[A]bsent any convincing evidence, in either the text, structure, or legislative history of the ACCA, that Congress intended to deviate from this general policy," this court should not require that highly prejudicial proof of prior convictions be required at trial. *Id.* It is true that a bifurcated trial would eliminate the prejudicial effect of introducing prior convictions before the jury. However, without exception, bifurcation is a result of specific legislative intent reflected by incorporation of appropriate provisions into the legislative enactment. It is apparent from the legislative history of the ACCA that Congress abandoned its initial intent to impose such a heavy burden upon prosecuting authorities and the courts.

As previously discussed herein, bifurcated trials were considered during the 1983 version of the ACCA but the concept of that earlier proposal was abandoned and replaced by the substituted version of the act which was ultimately adopted. S.Rep. No. 190, 98th Cong., 1st Sess. at 4 (1983); *Armed Career Criminal Act of 1983: Hearing on S. 52, supra,* at 20 (1983), H.R. 1627, 98th Cong., 1st Sess. § 2 (1983). Congressional action in refusing to provide for bifurcated trials in the enacted version of the ACCA again reflects upon Congress' intention not to create a new offense but rather merely to provide for a sentence

enhancing provision applicable to recidivist offenders.[6]

Lastly, the repeal and re-enactment of the ACCA's enhancement provision in the Firearm Owners' Protection Act of 1986 confirms that the statute was intended as an enhancing statute, not a separate substantive offense. The Firearms Owners' Protection Act of 1986 transferred the ACCA enhancement provision (previously found in 18 U.S.C. § 1202(a)) to 18 U.S.C. § 924(e). H.Rep. No. 99–495, 1986 U.S. Code Cong. and Admin.News 1327–1359, *described the change as a re-enactment of the ACCA. Id. at* 1349 and 1352. The Congress placed the new provision in the clearly denominated "Penalties" section of 18 U.S.C. § 924. As the *Jackson* court noted, "Thus Congress has now clearly, albeit prospectively, stated its intent to furnish a sentencing provision and not a provision defining a separate indictable offense." 823 F.2d at 23, n. 2.

Accordingly, I am persuaded that the Congress intended the ACCA to be a sentencing enhancement provision,[7] which conclusion would ordinarily dictate a decision in favor of the government. Rarely will the courts disturb the political branch's definition of the elements of a crime. "[I]n determining what facts must be proved beyond a reasonable doubt, the state legislature's definition of the elements of the offense is usually dispositive." *McMillan* 106 S.Ct. at 2416. *See also Martin v. Ohio,* —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).[8] *Accord United States v. Holland,* 810 F.2d 1215, 1221 (D.C.Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987) ("Punishment established by a democratically elected legislature is presumed valid and a heavy burden rests on those who would attack the judgment of the representatives of the people.") Some courts have, in fact, declared that the rationale of this statutory analysis should *always* conclude the inquiry. "Once the Armed Career Criminal provision is considered to be a sentencing provision, no due process issue is presented." *Hawkins,* 811 F.2d at 220.

---

**6.** The majority interpretation of § 1202 would place similar federal and state special dangerous offender statutes and recidivist enactments intended as sentence enhancers at risk. The bulk of these statutes do not consider enhancement provisions as separate offenses which must be pleaded and proved at trial. *Cf. United States v. Stewart,* 531 F.2d 326, 332 (6th Cir. 1976) (federal special dangerous offender statute provides far *more* due process protection for offenders than is required under analogous state recidivist statutes). *See also United States v. Ilacqua,* 562 F.2d 399, 404 (6th Cir.1977) (special dangerous offender statute is of the nature of a recidivist statute, and, as such, the feature of an enhanced sentence does not constitute a separate criminal charge requiring indictment by a grand jury). Indeed, a recent survey disclosed that only nine jurisdictions have adopted bifurcated two-stage trials in which the jury considers both guilt *and* enhanced punishment. *See* Schor, *State v. Green—Recidivist Statutes: The Procedure for the Introduction of Prior Crime Evidence,* 61 *TUL.L.REV.* 960, Footnote 32 (1987). Sentence enhancement statutes in as many as 41 states could be vulnerable to the majority's holding.

Such a wholesale invalidation of state enhancement laws would place this circuit at odds with the Fourth, Fifth and Eighth Circuits which have concluded that state sentence-enhancement provisions need not be proved at trial. *See Field v. Sheriff of Wake County, North Carolina,* 831 F.2d 530, 534–36 (4th Cir.1987) (holding as constitutional a North Carolina procedure in which trial judge enhances defendant's punishment); *Butler,* 825 F.2d at 902–03 (upholding Louisiana multiple offender statute which does not require grand jury indictment on sentence enhancement facts and which does not require that facts be established beyond reasonable doubt); *Wessling v. Bennett,* 410 F.2d 205, 209 (8th Cir.1969) (defendant had no federal constitutional right to be informed prior to his conviction of the habitual criminal charges that are grounds for sentence enhancement under Iowa statute).

**7.** *See Field v. Sheriff of Wake County, North Caroline,* 831 F.2d 530 (4th Cir.1987) (sentencing factors need be considered by judge only); *Buckley v. Butler,* 825 F.2d at 902–03 (it is clear that at sentencing the accused does not have the full panoply of due process protections which attend the determination of guilt or innocence; there is no Fifth Amendment right to grand jury indictment on sentencing facts). *See also McMillan,* 106 S.Ct. at 2420 (there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact).

**8.** The court said, 107 S.Ct. at 1099:
We there [in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)] emphasized the pre-eminent role of the states in preventing and dealing with crime and the reluctance of the Court to disturb a state's decision with respect to the definition of criminal conduct ...

I recognize the existence of some limited precedent which has suggested that Congress does not have *absolute* license to define the elements of a crime. "There are of course, certain constitutional limits beyond which a legislature may not go on defining the elements of a crime." *Hoover v. Garfield Heights Mun. Court*, 802 F.2d 168, 173, note 6 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987). "In certain *limited* circumstances, *Winship's* reasonable doubt requirement applies to facts not formally identified as elements of the offense charged." *McMillan*, 106 S.Ct. at 2417. Those limited suggestions notwithstanding, the facts presented herein do not rise to the level of "limited circumstances" alluded to in the cited cases.

The majority attempts to distinguish this formidable body of case law by urging that the Third, Ninth, D.C., and Tenth Circuit opinions have all failed to consider the effect of the Supreme Court decision in *McMillan*. It is true that these circuits, as well as the Fifth Circuit in *Davis*, have either ignored or rejected the analogy of *McMillan* to an interpretation of the ACCA. Judge Rosenn's dissent as adopted by the majority herein, stands alone as voicing the "maximum-minimum" sentencing distinction that Judge Rosenn evolved from *McMillan*.

To support its rationale the majority extrapolates a cannibalized passage from *McMillan* addressing the appellant's argument, ultimately rejected by the Court, that the Pennsylvania statute in controversy defined a new set of upgraded felonies which were required to be proved beyond a reasonable doubt. From the extrapolated language the majority hypothecates that *McMillan* requires "notice in the indictment and proof beyond a reasonable doubt of a fact that increases the punishment beyond the *maximum* set by the legislature for the other elements of the offense."

The majority's interpretation is founded upon a misconception of a passage in *McMillan* which in its uncannibalized form reads as follows:

> Petitioner's claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more *superficial appeal* if a finding of visible possession exposed them to greater or additional punishment ... but it does not ... [it only] rais[es] the minimum sentence that may be imposed by the trial court. (emphasis added).

*Id.* 106 S.Ct. at 2418.

The Court's passing remarks which did not rise even to the level of dicta, indicate that the appellants' argument had no more than *superficial* validity.

It should be of little surprise that the only other court that has considered the question has expressly rejected the majority's position. In *Field*, the Fourth Circuit has decided that maximum sentence-enhancers should be treated in the same manner as minimum sentence-enhancers. *See Field*, 831 F.2d at 536:

> We recognize that the statute considered in *McMillan* did not increase the maximum penalty available as N.C.G.S. sect. 20–179 does. But that fact alone did not form the basis for the Court's decision. Other equally important factors considered by the Court included its findings that the Pennsylvania statute did not create any impermissible presumptions nor did it relieve the prosecution of its burden of proving guilt.

In the instant case, no "presumptions" have been created, nor has the prosecution been relieved of its burden of proving guilt.[9] The Third Circuit has also specifically concluded that the ACCA procedures used in the instant case satisfied the due

---

**9.** Indeed, it is uncontroverted that defendants received the full panopoly of constitutional rights during trial.

process standards set forth in *McMillan.* *See Hawkins,* 811 F.2d at 220.

Accordingly, I would adopt the reasoning of the Third Circuit and its logic that the sentencing procedure at bar is clearly constitutional even under the rule of *McMillan.* It is important to note that the *McMillan* court specifically concluded that traditional sentencing factors need not be pleaded and proved at trial. *McMillan,* 106 S.Ct. at 2419. In the instant case, as in *McMillan,* the legislature "simply took one factor that has always been considered by sentencing courts to bear on punishment" —the number of prior offenses—"and dictated the precise weight to be given that factor." *Id.* at 2419. The congressional codification of traditional sentencing factors does not transform "a sentencing factor into an 'element' of some hypothetical 'offense.'" *Id.*

Finally, it is important to note that the primary rationale for requiring sentencing factors to be submitted to a jury—the necessity for accurate fact finding—does not apply in the instant case. Prior convictions are highly verifiable matters of record which need not be subject to jury inquiry. Because defendants have received the totality of constitutional protections due in the trials of the prior offenses, no additional factfinding is necessary. *See Buckley v. Butler,* 825, F.2d at 903:

> They [enhanced sentencing statutes applying to repeat offenders] have no relation to the circumstances of the wrongdoing constituting the most recent offense, but rather to something which is wholly unrelated thereto. Further, they do not relate to determining what the accused has done, but rather to what the state has *previously* determined that he has done. And that previous determination must have been a formal, judicial determination of guilt; and hence one as to which the full measure of constitutional protections was available.

In short, the government's interpretation of the ACCA has neither run afoul of the statutory or constitutional safeguards. Indeed, the ACCA has expressed a clear con-

gressional intent to enhance the sentences of repeat offenders. Moreover, *McMillan* and its progeny suggest that sentencing enhancers such as the ACCA are constitutional even if such legislation increases the *maximum* sentence available for a given crime. Accordingly, I would AFFIRM the decision of the district court in its entirety.