936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles F. HOFFMAN, Plaintiff-Appellant,
v.
Kent RUESCH, individually, and in his official capacity as
Deputy Sheriff of the Eaton County Sheriff's Office, and the
Eaton County Sheriff's Office, a department of the Eaton
County Government, Defendants-Appellees.
 No. 90-1371.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1991.
 
 Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Charles Hoffman, the plaintiff in this case, sued the Eaton County Sheriff's Department and Kent Ruesch, a Deputy Sheriff. The claim arises out of an October 1984 incident in which Deputy Ruesch shot the plaintiff, leaving him paralyzed. The district court entered summary judgment in favor of the defendants, and we now affirm.
 
 
 2
 Ruesch's version of the events in question is set out in an affidavit prepared during the course of this litigation. The only evidence presented by Hoffman to counter the Ruesch affidavit is a portion of a preliminary examination transcript from a prior criminal proceeding arising out of these same events. This prior criminal proceeding involved a full trial as well as the preliminary hearing and resulted in the conviction of the plaintiff, Charles Hoffman. Though Hoffman makes a number of unsubstantiated allegations, these allegations are totally unsupported by any evidence--either by an affidavit of his own or by evidence gleaned from the criminal trial. Because of the plaintiff's unwillingness or inability to present any countering affidavit, the defendants' version of the facts is the one that we must go with in evaluating the plaintiff's claim.
 
 
 3
 In October 1984, the police received a tip from the plaintiff's son, Mike Hoffman, that his father, who had just been released from prison, planned to seek revenge against the Eaton County Sheriff, the man responsible for putting him behind bars. Mike also indicated that his father planned a robbery of some sort. He said that his father had procured a gun and a mask for use in the robbery. On Saturday October 27, 1984, the Sheriff's department received another tip from Mike Hoffman: that his father planned a robbery that night. Mike Hoffman indicated that his father had practiced shooting the handgun on that day in preparation for the robbery. Finally, Mike claimed that his father had held the gun up to his (Mike's) head, saying that he (Mike) had better not inform anyone of his (the plaintiff's) intent to commit a robbery.
 
 
 4
 As a result of this tip, Deputy Ruesch proceeded to Carl's Supermarket in Olivet, the planned site of the robbery. Deputy Ruesch parked his car so that he could see the store. He observed Charles Hoffman, the plaintiff, standing in front of the store in the area of some vending machines, "killing time." Hoffman went to his car, lingered for one or two minutes, and then walked "briskly" into the store, pulling something over his face as he entered. A couple of minutes later, Hoffman left the store carrying a sack under his right arm and with his hand in his pocket. At this point, Ruesch decided to arrest the plaintiff.
 
 
 5
 Deputy Ruesch followed Hoffman as Hoffman left the parking lot in his car. Ruesch did not immediately attempt to stop him. He did not believe that stopping a potentially armed and dangerous individual in the highly populated area would be prudent at that time. The plaintiff, of course, has a more ominous explanation for Ruesch's delaying his arrest until reaching a more deserted location. Once they had reached an area that Ruesch considered "safe" to make the arrest, Ruesch and another police officer tried to stop Hoffman by turning on their police lights. After a series of "false stops," Hoffman finally pulled to a stop. Ruesch left his car and ordered Hoffman to surrender. Hoffman did not do so, but instead fled in his car. At this point, Ruesch shot at Hoffman as Hoffman was fleeing. Hoffman emphasizes that, in the preliminary examination, Ruesch admitted that he aimed the shot at Hoffman's head.[1] Ruesch then reentered his car, and continued the chase. After a short chase, Hoffman's vehicle left the road near a downed power line.
 
 
 6
 Here is where the parties' versions of events begin to diverge. Deputy Ruesch claims that Hoffman left his vehicle and began to flee on foot. Ruesch pulled up, leaped from his own car, and ordered Hoffman to surrender. Since Hoffman did not surrender but instead continued to run, Ruesch fired a shot at Hoffman, hitting him. Hoffman went down. Ruesch then approached the supine form. After handcuffing Hoffman, Ruesch discovered that Hoffman was injured, and he summoned an ambulance.
 
 
 7
 Hoffman has alleged that events were somewhat different. Hoffman claims that he was thrown clear of the car by the accident and knocked unconscious. According to Hoffman, Ruesch fired at him not as he was fleeing, but rather as he lay prone on the ground as the result of the accident. Hoffman has not provided an affidavit (or verified complaint) to support this version. In fact, Hoffman can't offer any direct evidence to support his allegation, since he admits that he has little recollection of the events immediately prior to being shot. The only evidence submitted by Hoffman to support his story is the brief excerpt from the preliminary examination transcript. Hoffman fails to explain how the transcript corroborates his claim, probably because it doesn't.
 
 
 8
 Mr. Hoffman has had prior occasion to appear before this court. He previously filed a different Sec. 1983 claim against various prison officials, alleging, inter alia, that he was denied the right to dental treatment and the right to mail letters. That suit ws dismissed by the district court, and Hoffman appealed. A panel of this court affirmed the decision of the court below. Hoffman v. Kelsey, No. 88-1587 (6th Cir. February 10, 1989) (unpublished opinion).
 
 
 9
 After the plaintiff filed the instant action and prior to the completion of discovery, the defendants moved for summary judgment and for a stay of discovery pending resolution of the motion for summary judgment. The plaintiff filed a cross-motion for summary judgment. The motion was referred to a magistrate, who granted the motion to stay discovery but recommended against granting either motion for summary judgment. Judge Enslen decided against the magistrate's recommendation and granted the defendants' motion for summary judgment. The plaintiff presents two interrelated arguments in favor of reversing. First, he claims that the evidence before the court was sufficient to present a disputed material issue of fact for the jury. Additionally, he claims that, even if he was unable to come up with evidence sufficient to get to a jury, the failure resulted from the district court's decision to grant the motion for summary judgment prior to the completion of discovery. He claims that the court's decision was premature because more discovery could have provided him with evidence sufficient to survive the motion for summary judgment.
 
 
 10
 Before dealing with the merits of the plaintiff's claims of error, we must first address an argument raised by the defendants in defense of summary judgment but not relied on by the district court. The defendants argue that Hoffman's claim here is barred by res judicata principles because he could have raised the same claims in his prior lawsuit. It may be true that the plaintiff could have added more defendants and joined the instant claim together with his prior claim about the conditions of his confinement. Under modern rules of civil procedure, many claims can be joined together in what is technically "the same" case, even when the claims don't have anything to do with one another. Thus, the defendant's statement of the principle of res judicata is overbroad. The doctrine of res judicata bars relitigation of an issue or claim where "the present action concerns the same subject matter or cause of action as the prior suit." Anchor Motor Freight v. International Brotherhood of Teamsters, 700 F.2d 1067, 1069-70 (6th Cir.1983). As the Fifth Circuit explained, res judicata principles bar the litigation of claims that "could and should have been brought in the earlier litigation." D-1 Enterprises v. Commercial State Bank, 864 F.2d 36, 38 (5th Cir.1989) (emphasis added). Hoffman's prior complaint does not arise out of the same factual nexus as does this one. We can think of no reason why they should have been brought together, and the defendant fails to supply us with any. Accordingly, we conclude that Hoffman's claim was not barred by res judicata and turn to the merits of it.
 
 
 11
 The plaintiff claims that Ruesch's shooting constituted an unconstitutional seizure of his person, violating his fourth amendment rights. The district court relied on the doctrine of qualified immunity in granting the motion, holding that the defendants did not violate a "clearly established" constitutional right. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Tennessee v. Garner, 471 U.S. 1 (1985), the Supreme Court held that the common law "fleeing felon" rule violated the fourth amendment. That case was decided in 1985, after the shooting at issue here. However, in its Garner decision, the Supreme Court affirmed our Garner decision--Garner v. Memphis Police Department, 710 F.2d 240 (6th Cir.1983). Accordingly, we recently held that, as of 1983, it was clearly established, within the confines of the Sixth Circuit, that the fleeing felon rule violated the fourth amendment. Robinson v. Bibb, 840 F.2d 349 (6th Cir.1989). Thus, before he would be legally justified in using deadly force to stop Hoffman, Ruesch had to believe that Hoffman was a danger either to the officers involved or to the community at large. Garner, 710 F.2d at 246.
 
 
 12
 Having laid out the principles applicable to police seizures through the use of deadly force after Garner, we note that the Garner principle really doesn't really come into play in this case. Garner applies to the limited situation of a fleeing felon who is not dangerous either to the community or the police. If the plaintiff could prove his claim--that Ruesch shot him while he was lying helpless on the ground--he would have a good claim regardless of what rule applied. By hypothesis, Hoffman wasn't fleeing. Similarly, under Ruesch's version, he wins even under the higher standard. Ruesch provided an affidavit that he was told, by Hoffman's son, that Hoffman had a gun. Further, Ruesch had been informed that Hoffman had threatened his own son. Thus, Ruesch had reason to believe that Hoffman was a danger to pursuing officers and the community. He therefore satisfies the requirements of Garner.
 
 
 13
 Accordingly, we can turn from the difficult questions of qualified immunity and the constitutional limits on the police use of deadly force to the somewhat easier concern of whether the plaintiff has presented evidence sufficient to survive the motion for summary judgment. As the Supreme Court has explained, "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), quoting FED.R.CIV.P. 56(e).
 
 
 14
 The plaintiff has failed to come forward with any such evidence in support of his version of the events. He claims that Ruesch's version of events is not consistent with the testimony at Hoffman's criminal trial arising out of the robbery. Unfortunately, Hoffman did not attach any portion of the trial transcript to his response to the motion for summary judgment. Hoffman tries to shift the burden to Ruesch by arguing that if Ruesch's version of events were corroborated by the trial, then he surely would have attached a portion of the transcript to his motion. This attempt at burden-shifting is not well-taken. Hoffman had the burden of presenting evidence inconsistent with Ruesch's. He failed to do so.
 
 
 15
 Hoffman also claims that, even if Ruesch's version of the facts is true, there was no probable cause for the seizure that took place when Ruesch shot Hoffman.[2] This argument is frivolous. It is arguably true that flight alone is not sufficient to establish probable cause,[3] and it is certainly true that an uncorroborated tip, standing alone, is not sufficient to establish probable cause. See Illinois v. Gates, 462 U.S. 213 (1983). Here, however, Deputy Ruesch had a tip from the plaintiff's son. Not only was the son in a position to observe the plaintiff's actions, but the police were entitled to believe that the son was telling the truth, since children do not normally give false tips about their parents. Moreover, Ruesch observed Hoffman engaging in what was unquestionably suspicious behavior outside of Carl's Supermarket. See United States v. Brewer, 841 F.2d 667, 670 (6th Cir.1988), (suspicious, though not illegal, behavior alone can constitute probable cause) on reh'g, 853 F.2d 1319, cert. denied, 109 S.Ct. 375. Thus, we have no difficulty in holding that the tip, the flight and the suspicious behavior in and around Carl's Supermarket constituted more than probable cause. Moreover, since the subsequent behavior corroborated the tip, we believe that Ruesch had probable cause to believe that Hoffman had a gun. Hoffman's attempts to undermine this obvious conclusion are ineffectual. Hoffman points out that, at the preliminary hearing, Ruesch admitted that, at the time of the seizure, he had not been formally notified of the robbery of Carl's Supermarket and that he didn't see the gun prior to firing at Hoffman. Neither point is very important. We don't believe that the constitutional requirement of probable cause requires a police officer to wait until a robbery is reported when he actually sees one in progress. Here, Ruesch observed conduct that, together with other information in his possession, led him to believe reasonably that a robbery had taken place. This was sufficient for him to seize Hoffman. Nor do we believe that a suspect must actually draw a weapon before a police officer reasonably acts on the theory that the suspect has one and is prepared to use it.
 
 
 16
 Normally, we would end our analysis at this point. Hoffman still has one chance, however. He claims that the district court's granting of the motion for summary judgment was premature, that the court should have waited until the completion of discovery. Having perused the plaintiff's discovery requests, however, we are convinced that there was no error. Hoffman claims that the trial transcript and unknown forensic evidence could corroborate his story. Neither the trial transcript nor Hoffman's body (which would presumably be the source of the forensic evidence) are within the defendants' possession or control. None of the discovery requests in the record before us seems reasonably calculated to lead to evidence that Hoffman shot Ruesch while lying on the ground. Qualified immunity does, after all, protect against wide-ranging discovery as well as against liability in ambiguous situations. See Harlow, 457 U.S. at 818; Poe v. Haydon, 853 F.2d 418 (6th Cir.1988); Dominique v. Telb, 831 F.2d 673 (6th Cir.1987).
 
 
 17
 The plaintiff also makes a Canton v. Harris, 109 S.Ct. 1197 (1989), claim against the Eaton County Sheriff's department for its failure properly to train its officers. William Voight, the "Undersheriff" of Eaton County provided an affidavit that, at the time of the shooting, the Eaton County Sheriff's department relied on the common law "fleeing felon" rule and that the department did not revise its policy until after the Supreme Court's Garner decision. Given our Garner decision, the department should not have waited for the Supreme Court to decide Garner. The Eaton County Sheriff's department has no authority to flout the decisions of this court. Nonetheless, the plaintiff still doesn't have a claim against the city. Assuming, arguendo, that the Sheriff's Department's actions constituted a "deliberate indifference to the rights of persons with whom the police come into contact," id. at 1204, such deliberate indifference must actually cause the injury in question. Id. at 1205. Here, however, we have concluded that Deputy Ruesch acted in a lawful manner (or, rather, that the plaintiff failed to come forward with any evidence that Deputy Ruesch acted in other than a lawful manner). He would have been justified in shooting Hoffman even if the department had provided him with a constitutional law professor to stand at his side and instruct him in the proper standard. Accordingly, the district court did not err in granting summary judgment on the claim for failure to train.
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Hoffman seems to believe that this fact is of incredible importance. However, the preliminary examination made it clear that Hoffman was seated in his car as he fled the scene. When one is seated in a car, one's head is typically the only portion of the body exposed to view. Thus, it does not seem terribly incriminating to us that Ruesch aimed at this part of the body. In any event, he missed
 
 
 [2]
 Hoffman maintained in his brief that the seizure at issue here took place at the time of the first shot. At the time the briefs were written, this argument might have been colorable. However, as the Supreme Court recently made clear, seizing someone by a show of force--which is all shooting at someone amounts to--only takes place when the person being seized actually submits to the authority of the police. California v. Hodari D., 111 S.Ct. 1547 (1991)
 
 
 [3]
 Although it is pure dictum, Justices Scalia and Stevens join issue in the Hodari case on whether flight alone constitutes probable cause. See Hodari D., 111 S.Ct. at 1549 n. 1 (Scalia, J., suggesting that flight alone might create probable cause), id. at 1553 n. 1 (Stevens, J., dissenting, taking issue with Justice Scalia's suggestion)